MICHAEL BASTA et al., Appellees, v. FARM PROPERTY MUTUAL INSURANCE ASSOCIATION, Appellant.

No. 42067.

December 12, 1933.

Howe & Howe, for appellant.

Emmert, James, Needham & Lindgren, and Swan, Martin & Newton, for appellees.

Donegan, J.—Michael Basta, plaintiff, was the owner of a farm near Monteith, in Guthrie county, Iowa, on which his co-plaintiff, Anderson Fenimore, held a mortgage for $2,000. The house upon said farm was insured in the defendant company for $1,000. The house was occupied by Arthur Volz and Elsie Volz, his wife, as tenants of Michael Basta. On the evening of September 10, 1931, Mr. and Mrs. Volz, having returned to the home and found a fire in the kitchen, hastened to get the help of neighbors, and the fire was supposedly put out after having damaged the walls near the kitchen stove and in two adjoining rooms. Mr. and Mrs. Volz did not remain in the house but spent the night with neighbors. They also remained away from home on the following night on account of the damage which had been done, and on this night, September 11, 1931, the house was completely destroyed by fire.

The defendant company having refused to pay the loss, this action was commenced by the plaintiff on the 19th day of January, 1932. In his petition and amendment thereto the plaintiff alleged the occurrence of the fire resulting in the complete destruction of the house, and alleged that the defendant company had waived the filing of proofs of loss as provided in the policy. The defendant

company answered, denied generally the allegations of the petition, and expressly denied that any verified proofs of loss had been filed or that there was any waiver of such proofs by the defendant. The case was tried to a jury, which returned a verdict in favor of the plaintiff for the full amount of the policy and interest. From the judgment entered upon such verdict, the defendant appeals.

The real question at issue in this case is whether the defendant insurance company waived the filing of verified proofs of loss. The application for the policy in question was made out for the plaintiff by one Meyer, a soliciting agent for the defendant company at Menlo, Iowa. Meyer testified that Mr. Stanley, an officer of appellant company, had told him that whenever there was a fire loss to telephone the company or notify them by mail so they would know about the claim. On September 11th, the day following the first fire, Meyer, after visiting the premises, wrote the defendant company to send an adjuster "to settle the claim of Roy Hays, Menlo, Iowa, and Mike Basta and Arthur Volz, 1½ miles north and 1 mile west of Monteith, as they had a partial loss on household goods on September 10, 1931, about ten P. M". The defendant company held a policy of insurance on the household goods of Arthur Volz as well as on the house owned by Basta. Meyer also wrote Fenimore and told him of the fire. Fenimore lived near Peru, in Madison county, Iowa.

About September 17, 1931, J. H. Bayne, a representative of appellant company, called upon Meyer and told him that he came to look about a couple of fires. At that time Meyer told Bayne that the house in question was a total loss and Bayne said he would go out and see it. Bayne did visit the scene of the fire that afternoon, and talked with Elsie Volz, wife of the tenant, on whose furniture appellant also had written a policy of insurance. Later, on the same day, Meyer saw Bayne at Stuart, Iowa, and testified that Bayne told him "that there was a total loss out there and they had to pay this claim and he would go out and hunt Mike Basta up and for me not to worry about it". Bayne denies that he made this statement. On receiving word from Meyer that the house had been destroyed, Fenimore went to see Meyer, but did not find him. He then went to see Basta, who was working near Winterset, Iowa, told Basta of the fire, and Basta told Fenimore to look after the insurance. Following this visit of Fenimore to Basta, Fenimore met Meyer in the office of a Mr. Strong in Stuart, Iowa, and there Meyer

told Fenimore that Bayne had told him (Meyer) that he would look after the claim, and that it would be paid, and that Bayne had told him that Bayne would go out and find Mike Basta and settle the claim. At this meeting, which it is claimed took place September 25, 1931, there was present, besides Meyer and Fenimore and Mr. Strong, a Mr. Hill. Fenimore told Meyer to look after the insurance and Meyer said that he would do so. At that same time, in the presence of Fenimore, Strong, and Hill, it is claimed by appellee that Meyer wrote a second letter to the defendant company, containing statements that Fenimore, Strong, and Hill told him to write, stamped it, and mailed the letter in the post office in Stuart, Iowa. The defendant company admits the receipt of the letter of September 11th, notifying it of the first fire, but denies that it received the last above-mentioned letter which Meyer claims to have written and mailed from Stuart, Iowa.

I. Appellant alleges that the court erred in permitting the witness Meyer to testify to the conversation between himself and J. H. Bayne in which he claims that Bayne told him "that there was a total loss out there and that they would pay this claim and that he (Bayne) would go and hunt up Mike Basta and for me (Meyer) not to worry about it", on the ground that it is not shown that Bayne had any authority to bind the insurance company. In support of its contention, appellant introduced its contract with Bayne. The contract thus introduced contained provisions to the effect that "said J. H. Bayne shall give his entire time to the appointment of agents and soliciting of insurance only. * * * He shall have no authority to adjust losses or handle them in any way excepting such as may be referred to him, and then only as directed in any individual case". In addition to this, appellant introduced the testimony of Forest Huttenlocher, the president of appellant company, and of J. H. Bayne, who both testified that Bayne had no authority to adjust losses except when specifically authorized to do so. It appears in the evidence, however, that the appellant company had no other full-time employee except Bayne who adjusted losses, and that, although Huttenlocher stated that he was the only adjuster for the company, except as he appointed them for particular matters, he had, according to his own testimony, "spent maybe three or four weeks out of the whole year in adjusting losses", in 1931. On cross-examination of Bayne, the reports made by him to the company were introduced and showed a practically continuous course of ad-

justments made in behalf of the company by Bayne during the entire year of 1931. Moreover, Bayne was sent to the scene of the fire in question in response to Meyer's letter which told the company to "send the adjuster out at once to settle the claim of Roy Hayes, Menlo, Iowa, and to Mike Basta and Arthur Volz 1½ miles north and 1 mile west of Monteith". Regardless of the terms of the written contract between appellant and Bayne, the appellant would be bound by the acts of Bayne, which those with whom he dealt had a reasonable right to believe he was authorized to do. In Nertney v. National Fire Ins. Co., 199 Iowa 1358, 203 N. W. 826, we said:

"It is often said that an insurance company must act through agents who deal directly with those whose property it insures. They look to and rely upon the agent as the full and complete representative of the company in all that is said and done in making the contract, and have a right to so regard him. 'The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.' * * * 'These restrictions in the application on the power of the agent do not affect the authority of the general agent to do what those dealing with him were authorized to believe he had the right to do.' "

In Grant v. Humerick, 123 Iowa 571, 94 N. W. 510, it is stated:

"That an agency may be implied or presumed from the conduct of the parties, no one will deny; and it is a general rule that where a party has so acted as to reasonably warrant the presumption that another is his agent for general or specific purposes, 'whether it be in a single transaction or in a series of transactions, his authority to act for him in that capacity will be conclusively presumed,' so far as it may be necessary to protect third persons who have acted in good faith and with reasonable prudence."

See, also, Boylan v. Workman, 206 Iowa 469, 220 N. W. 49; Fishbaugh v. Spunaugle, 118 Iowa 337, 92 N. W. 58.

We think the evidence was such that the jury could have found that Bayne had apparent authority to settle the loss and that there was no error in allowing his statement to be introduced in evidence.

II. Appellant contends that the trial court erred in permitting the witness Meyer to testify to the conversation between himself

and Fenimore in which he claimed to have told Fenimore that Bayne had told him (Meyer) that there was a total loss, that the company would pay the loss, and that Bayne would go out and hunt up Mike Basta and make settlement with him, and that Meyer need not worry about it. This contention is based upon the claim that Bayne was a mere special agent with limited powers; that Meyer was a mere soliciting agent; that Fenimore was merely the mortgagee in no way representing the defendant company; and that, because of the lack of authority in either Bayne, Meyer, or Fenimore to represent the defendant, the repetition by Meyer to Fenimore of what Bayne had told Meyer was merely hearsay. Of course, if the witness Bayne did not have the authority to adjust this loss or to bind the company, it would be immaterial what he might have said in reference to the settlement of the loss, and a repetition of this statement would be subject to the objection made by appellant. As we have already seen, however, there was sufficient evidence from which the jury might determine that Bayne did have authority to represent the defendant company and adjust the loss; and, if the jury should find that he had such authority, his statement to Meyer would not only be material and competent evidence, but the repetition of this statement to Fenimore, who was the mortgagee and therefore interested in the insurance, would likewise be material and competent. If it be a fact, and we think there is evidence from which the jury might have so found, that Bayne did have at least apparent authority to adjust the loss and to bind the company and that he made the statement in regard to payment of loss, as claimed by Meyer, we think it reasonably may be inferred that the appellant company would naturally expect Meyer to communicate the statement to those interested in the insurance, and that, when those interested in the insurance received such information, their actions in connection with the collection of the insurance would be influenced by the information thus received. We find no error in allowing the evidence complained of to be introduced.

III. Appellant alleges that the court erred in permitting the witness Fenimore to testify to his conversation with E. H. Meyer as to what Bayne had said to Meyer, and that he relied on what Bayne said, because this was a mere self-serving declaration. Whether or not reliance was placed upon the statement made by Bayne was an important matter in this case. It was necessary to show that reliance was placed upon this statement. There was evi-

dence to show that Basta authorized Fenimore·to look after the insurance; that Fenimore went to see Meyer in regard to the insurance; and that Meyer told Fenimore of the statement made by Bayne. We see no reason why Fenimore should not be allowed to show that Bayne's statement was communicated to him, that he relied upon it, and that because of such reliance he did nothing further in the way of presenting proofs.

IV. Appellant contends further that the court erred in refusing to direct a verdict for the appellant at the close of appellee's testimony, because appellee had failed to establish a waiver of proof of loss. After the court had overruled this motion, appellant did not rest its case, but proceeded to introduce testimony on its own behalf. At the close of all the testimony the appellant again moved the court for a directed verdict. This motion contained the same grounds which were stated in the motion for a directed verdict made at the close of plaintiff's testimony, in addition to other grounds. It is necessary, therefore, to consider only the allegation of error based upon the order of court overruling the motion of appellant for a directed verdict made at the close of all the testimony.

This motion contained six grounds. All except one of these grounds dealt with the alleged insufficiency of the evidence to establish a waiver of proof of loss. The other ground was that a verdict against the defendant would be based entirely upon hearsay testimony. The question of hearsay testimony has already been considered in the foregoing divisions of this opinion. We confine ourselves, therefore, to the question of the sufficiency of the evidence to support the claim of a waiver of proof of loss.

 Both the policy and a statute of this state provide for the service of proof of loss upon an insurance company before the insured will be entitled to recover. This provision is for the protection of the insurer, and, being for its protection, it may be waived. This doctrine is so firmly established in this state that it seems hardly necessary to cite authorities in support thereof. As said in Nicholas v. Iowa Merchants Mutual Insurance Company, 125 Iowa 262, 101 N. W. 115:

"That an insurance company may waive proofs of loss, notwithstanding the provisions of the statutes quoted, is too well settled to require the citation of authorities; and the only question for our determination here is, was there sufficient evidence of waiver to take the case to a jury? Waiver is the intentional relinquishment of a

known right. Defendant knew its right to have statutory proofs of loss, but it could waive this by such acts or conduct on its part as to justify the conclusion that it was not intending to insist upon full compliance with the statute. It could also waive by refusing to pay the loss."

That a promise to pay will amount to a waiver is established by the case of Lake v. Farmers Insurance Company, 110 Iowa, 473, 81 N. W. 710, wherein we said:

"The waiver is put on the ground that an insurer whose conduct is such as to induce the insured to rest under a well-founded belief that strict performance with a condition will not be insisted on cannot in good faith afterwards set it up as a bar to recovery. * * * On principle, the promise to pay should be as effective as a waiver of proofs as the denial of liability; for in the one case, as in the other, furnishing proofs would be but an idle and useless ceremony. Besides, a promise of settlement would be inconsistent with insistence on strict compliance with the conditions of the contract. * * * The company should be given large liberty in the matter of investigating the character of the loss, but when this has been done, and a promise to adjust, to determine what is due, is made, on certain conditions, the insured has the right to rely thereon; and if he does so, and omits formal proofs of loss, it does not lie with the insurer to gainsay the natural results of its conduct."

Other cases confirm the rule announced in the cases above cited and make it apparent that, as said in Lake v. Farmers Ins. Co., supra, "an insurer whose conduct is such as to induce the insured to rest under a well-founded belief that strict performance with a condition will not be insisted on cannot in good faith afterwards set it up as a bar to recovery."

What was the conduct in this case upon which the appellee based his belief that a strict performance would not be required? Following the fire, Meyer, the insurance company's soliciting agent, pursuant to instructions which he had previously received from the appellant company, wrote to the appellant telling it of the fire and asking it to send out an adjuster. Several days thereafter, Bayne, who was a representative of the company, appeared at Meyer's residence and told him that he had come to look about a couple of fires. Meyer told him that the house was a total loss, burned to the ground, and Bayne said he would go and see it. The evidence

showed that he did visit the scene of the loss; that he told Mrs. Volz that he was from the insurance company; and that he stayed there from half to three-quarters of an hour. In the evening of the same day, Bayne met Meyer at Stuart and, according to Meyer's testimony, there told him that it was a complete loss, that the company would pay it, that he would look up Basta, that it would be paid at the end of sixty days, and that he (Meyer) need pay no further attention to it. As we have already seen, there was evidence from which the jury could have found that Bayne had authority to adjust the loss and to bind the appellant company. In addition to this, there is further evidence tending to show that the company had entered on its records a notation of the loss under this particular policy, and that these records showed the names of both Basta and Fenimore as interested in the claim. The records of the insurance company also show that they were altered, and that the date of loss and number of the policy had been erased.

There was further evidence tending to show that, after Meyer had written to the appellant, on September 11th, telling it of the fire and asking it to send an adjuster, he met Fenimore at Strong's office in Stuart, about the 25th of September, and told him of Bayne's statement, and that at that time and place, pursuant to Fenimore's request that he look after the insurance, he wrote another letter to appellant company in reference to the loss, and that this letter was placed by him in an envelope with postage and mailed to the appellant company.

We think the evidence is such that the jury could have found therefrom that the appellant company received Meyer's letters of both the 11th and of the 25th of September; that it sent Bayne out to investigate the loss, and that Bayne did have at least apparent authority to adjust the same; that the statement made by Bayne was such and was made under such circumstances that both Bayne and the appellant company would reasonably expect it to be communicated by Meyer to the persons carrying the insurance; that having, through Bayne, told Meyer that the loss would be paid, and expecting that Meyer would communicate this statement to the insured, and having received Meyer's second letter of September 25th, after he had been authorized by Fenimore to look after the insurance for both Fenimore and Basta, the appellant company led Fenimore and Basta and Meyer as their agent to believe that no further proof would be required; and that, because of the conduct

of the appellant company, as shown by all these facts and circumstances, it was a question for the jury to determine whether or not this conduct would amount to a waiver.

■ V. Complaint is made because of the court's instruction No. 5, on the ground that it permitted the jury to consider all acts and conduct of the appellant company without limiting it to such acts and conduct as came to the knowledge of the plaintiff, and permitted the jury to find that the appellant knew that it was misleading the plaintiff when there was no evidence upon which such a finding could be based. Instruction No. 5, after stating that the appellant company had the right to be furnished with proof of loss, proceeded to tell the jury that this requirement could be waived by the company, and in this connection said:

"In the present case you are instructed that plaintiff failed to furnish the proofs of loss provided for by said policy and by law, and that plaintiff does rely upon a waiver of the same by defendant.

"In that connection the burden is upon plaintiff to establish such waiver by a preponderance of the evidence. You are instructed that if you find from all the evidence in this case that there were such acts and such conduct on the part of the defendant by its officers or agents, or any of them, with real or apparent authority as hereinafter defined to so bind the company, that would cause a man of ordinary judgment and discretion to believe that formal proofs of loss within 60 days would not be required, and that the same had been waived, that plaintiff so believed and so acted upon such belief, the company knowing it was causing plaintiff to so believe, would amount to a waiver of such proofs by acts and conduct of the defendant company. But in the event you find plaintiff has failed to so establish said waiver by a preponderance of the evidence, then your verdict will be for the defendant."

As already stated, we think the evidence sufficient to present the question of waiver to the jury, and we find nothing in the court's instruction which was misleading or prejudicial to the appellant. Had appellant desired further instruction on the question of waiver, such instruction should have been requested. In the absence of such request, we find no error.

VI. Objection is also made to instruction No. 6 given by the court, on the ground that it permits the jury to find that Bayne had authority to settle or adjust said loss, or apparent authority to do

so, without instructing the jury in any way as to what could be considered in determining apparent authority. The portion of the instruction dealing with Bayne's authority is as follows:

"The defendant claims that its employe, J. H. Bayne, who has testified in this case, was without authority to waive the proofs of loss required by the policy sued upon herein and by law. In this connection, unless you find from all the evidence in this case, written and oral, either that said Bayne had actual authority to settle or adjust the loss for which this action is brought, or such apparent authority as would lead a person of reasonable or ordinary prudence and business judgment to believe that Bayne had said authority to settle or adjust said loss, then you as jurors must find that said Bayne had no authority to waive said proofs of loss, and in that event your verdict must be for the defendant."

We think the facts and circumstances in evidence were sufficient to support the instruction given by the court, and that this instruction was such as would be easily understood by the jury without further elaboration. Had the defendant desired further instruction, it should have requested same.

VII. Appellant's final objection is that the trial court erred in not permitting the witness Bayne to testify that he found the fire to be of incendiary origin, that the property was used for the sale of intoxicating liquor, and that this fact was reported by him to the appellant company. The only part of the record having any reference to the matter referred to in this assignment of error made by the appellant appears in the evidence of the witness Bayne, and is as follows:

"I told him (Huttenlocher) what Mr. Volz had told me and what the Deputy Sheriff had told me.

"Q. What did you tell Mr. Huttenlocher as president of the defendant company you had ascertained from Mr. Volz with respect to the circumstances of this fire?

"Mr. James: That is objected to as hearsay; incompetent, irrelevant and immaterial, and in no way binding upon the plaintiff.

"The Court: Sustained. (Defendant excepts.)

"Judge Howe: I suppose, your honor, that at the proper time we may let the record show what his answer would have been.

"The Court: Yes.

"Judge Howe: That is all. You may cross examine."

No affirmative defense alleging the incendiary origin of the fire, or the use of the property for an unlawful purpose, was pleaded by the defendant. The evidence shows that the house was worth from $1,500 to $2,000, while the insurance was $1,000. So far as the record shows, the defendant did not offer to prove either of the affirmative defenses referred to in its assignment of error, and did not ask leave to amend its pleading in order that such proof might be made competent and material. We find no error in the court's ruling on the evidence offered.

Appellant's motion to strike appellee's amendment to abstract, which was submitted with the case, is hereby overruled.

The judgment of the trial court is affirmed.—Affirmed.

ALBERT, C. J., and EVANS, KINDIG, and CLAUSSEN, JJ., concur.