MANUFACTURERS & MERCHANTS IN-
DEMNITY CO. v. CLAMAN et al.

No. 1-4.

United States District Court
S. D. Iowa, S.D.

March 15, 1951.

J. A. C. Kennedy, Jr. (of Kennedy, Holland, DeLacy & Svoboda), Omaha, Neb., and Ross, Johnson, Northrop & Stuart, of Council Bluffs, Iowa, for complainant.

D. J. Fairgrave and Howard A. Steele (of Brawshaw, Fowler, Proctor & Fairgrave), Des Moines, Iowa, for defendants.

RILEY, District Judge.

This action is brought by complainant, an Ohio corporation, against the defendants Claman, a citizen of Iowa, Concrete Materials Corporation and Employers Mutual Casualty Company, both Iowa corporations, for a declaration of its right and other legal relations under a policy of automobile liability insurance, as provided by Title 28 U.S.C.A. § 2201, formerly Section 400, Title 28. The defendant Claman made no appearance.

I

Complainant and the corporate defendants have submitted the case on an agreed stipulation of facts and written briefs. These facts are agreed:

1. That complainant issued to Claman, then a resident of Missouri, its policy of insurance for a period of one year from Nov. 27, 1948, agreeing, subject to a premium and conditions therein, to pay on his behalf all sums which he shall become obligated to pay by reason of liability imposed upon him by law for damages because of

injury to persons or property of another, due to the operation of his truck and to defend him against claims therefor, to a maximum liability of $20,000 for bodily injury and $5,000 for property damage liability in a single accident.

2. Claman was then engaged in hauling rock in an independent contractor status for Concrete Materials on its job near Ravenwood, Missouri, and was so engaged under his contract on Dec. 13, 1949, when his truck became involved in an accident with an automobile. The automobile operator has commenced an action in the Circuit Court of Missouri, claiming damages to his person and car, and another has commenced a separate action for damages for personal injuries claimed because of the same collision, the total of both exceeding the above coverage. In each action, both Claman and Concrete Materials are joined as parties defendant, and it is alleged that Claman was the agent, servant and employee of Concrete Materials acting within the scope of his employment in the operation of his truck when the accident occurred.

3. Demand has been made on complainant by both Concrete Materials and Employers to defend both actions and to indemnify the former against loss within the above policy limits. Complainant has refused to accept the defense and denies liability or obligation under its policy, claiming that its policy expired by its own terms on Nov. 27, 1949, and was not in force when the accident occurred on Dec. 13, 1949.

4. Incident to its hauling contract, Concrete Materials demanded from Claman and received from complainant's branch manager and agent in Omaha, at Claman's request, a certificate of insurance on a printed form supplied by Concrete addressed—"To Concrete Materials & Construction Company, address P. O. Box 790, Cedar Rapids, Iowa," certifying as to the issuance of the above policy to Claman—"for the period from November 27, 1948, to February 27, 1950," for coverage in Missouri and Iowa, indemnifying his truck and stating the amount of policy limits. In a box in large capital type is printed: "This

Is Not An Insurance Policy" and at the bottom of the certificate is the statement: "The Concrete Materials & Construction Company will not accept any automobile insurance certificate except on this form." It is stipulated "that in fact, however, said policy expired by its terms on Nov. 27, 1949, and was not renewed and no premium was paid to or received by complainant to extend said policy beyond Nov. 27, 1949"; also, "that said certificate was not intended to operate as a policy of insurance and both parties understood it was not an insurance policy;" that the date of February 27, 1950, instead of Nov. 27, 1949, was erroneously inserted due to the mistake of the branch manager's secretary in using the expiration date of a separate collision policy issued on the same truck for the financing company. No question is raised as to the authority of the branch manager to execute the certificate. The certificate was mailed to and received by Concrete Materials on Dec. 8, 1948. Prior thereto Concrete Materials had been making deductions for public liability and property damage insurance from all payments for hauling made to Claman and had paid to its insurance carrier the amount of such deductions as premiums due for coverage on account of Claman's operations under its insurance policy. After receiving the certificate of insurance from complainant on Dec. 8, 1948, Concrete Materials ceased to make such deductions.

5. On July 19, 1949, Employers Casualty issued its automobile liability policy to Concrete Materials providing coverage for one year, the endorsements upon which provided as follows:

"For and in consideration of the rates and premium charges made under the policy to which this endorsement is attached, it is understood and agreed between the Named Insured and the Company that the limits of liability under said policy shall be, as regards the Named Insured, One Hundred Thousand ($100,000) to each Person, Two Hundred Thousand ($200,000) to each accident, and Twenty-five Thousand ($25,000) to each accident property damage.

"As regards the additional insureds extended under the Hired Automobile En-

dorsement, individuals, firms, or corporations from whom automobiles or trailers are hired, the limits of liability shall be in their behalf only Ten Thousand ($10,000) to each person, Twenty Thousand ($20,000) to each accident, and Five Thousand ($5,000) to each accident property Damage."

Hired Automobile Coverage Endorsement.

"In consideration of the premium determined as hereinafter provided for, it is understood and agreed by and between the Company and Named Insured that this policy shall cover the operation of all automobiles of the type stated in the policy hired by the Insured during the term thereof and used for the purposes stated in the declarations of the policy, without a specific description of, and specific premium charge for, each automobile to be covered as required by the policy period.

"The actual earned premium for the policy shall be adjusted monthly and shall be computed on the basis of the amount actually incurred (whether paid or not) by the Insured for the hire of the type of automobiles stated in the policy, at the rates shown below. The amount incurred for the hire of automobiles and trailers shall include the wage of the insured's chauffeurs, provided automobiles are hired without chauffeurs in attendance. The Insured agrees to keep an accurate record showing all the information necessary for the proper computation of premium under this policy, which record the Company shall be permitted to examine at all reasonable times during the term of this policy or within two years thereafter.

"It is further understood and agreed that the provisions of this policy (as respects only the operation of automobiles and trailers in connection with the performance of work by the Named Insured) shall extend to cover the liability of an individual, firm or corporation, from whom automobiles and trailers covered hereunder have been hired. It is understood and agreed that if the Named Insured is covered under a policy taken out by the owner or operator of an automobile insured under this endorsement, the coverage under this endorsement shall be excess coverage over and above the valid and collectible insurance under the policy taken out by the owner or operator of the car.

"Additional Declarations

Rate Per $100

"Estimated amount to be paid for hire of automobiles during the policy period.  } Commercial automobiles

|  | P. L. | P. D. |
|---|---|---|
|  | $1.92 | $1.80 |

Hired Operators or Independent Contractors (No Certificate of Ins. on file)"

|  | $1.92 | $1.80 |
|---|---|---|

Endorsement.

"It is further understood and agreed that the terms of the Hired Automobile Coverage Endorsement attached to this policy are amended in the following particulars:

"If the Insured shall have in his possession, and displayed to any authorized representative of the company, a certificate of insurance from an insurer authorized to do business in the State of Iowa, showing that any individual truck owner from whom the Insured has hired automobiles is insured for bodily injury and property damage coverages, the rates of insurance premium shall, during the period covered by the certificate of insurance, be amended as follows:

"The rate of premium shall be as follows:

"Bodily Injury Liability........... $ .27
"Property Damage Liability....... $ .25"

II

From July 19, 1949, up to and including Dec. 13, 1949, it was agreed that Concrete Materials had displayed to Employers Casualty the certificate of insurance issued by complainant and relying thereon Concrete Materials had paid to Employers and it had accepted premiums on account of Claman's operations at the lower rates of $.27 and $.25 per $100, as above, and that if the certificate had contained the correct expiration date of Nov. 27, 1949, Concrete Materials would have deducted after Nov.

27, 1949, from payments for hauling made to Claman and Employers Casualty would have demanded, premium payments at the rates of $1.92 and $1.80 as above. Neither defendant had any notice or knowledge prior to Dec. 13, 1949, that the certificate of insurance was incorrect, that Claman's policy expired Nov. 27, 1949, but believed it would expire on Feb. 27, 1950.

In its complaint, plaintiff asks for a declaration that it is under no duty to defend the suits against Concrete Materials for the benefit of Employers, or to assume the defense of or against any liability for the acts of Claman at the time of the collision and that the collision and accident on Dec. 13, 1949, were not covered by its policy by reason of its prior expiration.

The corporate defendants join in a single answer and counterclaim which admit some of the facts, later stated in more detail in the stipulation and both "admit that during the period covered by the accident Concrete Materials was covered by Employer's policy, but that it was for excess coverage over and above that of complainant's policy to Claman." They claim to have relied to their detriment upon the statements in the certificate of insurance issued by complainant, that Claman would not have been permitted to haul without adequate responsible coverage, that relying upon the certificate Concrete Materials paid and Employers accepted the lesser premiums and that complainant is estopped and should not be permitted to urge the termination of its policy on Nov. 27, 1949. They pray for a declaration that as to them the Claman policy was in force and effect from Nov. 27, 1948, through Feb. 27, 1950; that complainant is under duty and obligation to defend the suits arising out of the Dec. 13, 1950, collision and that the damage arising therefrom is covered by the Claman policy. In their counterclaim they plead and rely upon the same facts to entitle them to a declaration of liability on the part of complainant to defend the suits against Concrete Materials, to pay any judgment rendered within the policy limits and that as between complainant and Employers the former's policy is the primary coverage and Employers is excess above the limits of

the Claman policy. All ask for equitable relief.

In their filed brief defendants say "It is, of course, true that Concrete Materials itself is fully insured by Employers irrespective of whether Claman had insurance of his own or not."

Defendants rely on an estoppel as against complainant, however, to hold the latter liable on a policy that all recognize is not enforcible by the defendant Claman since its coverage for him had expired by its terms on Nov. 27, 1949, or 16 days prior to the collision.

There is here requisite diversity of citizenship and an actual controversy for more than the jurisdictional amount. It is such a real controversy as is within the purview of the Declaratory Judgment Act and in which this court may grant relief.

The controversy involves determination of the question whether the erroneous statement as to date of expiration of the Claman policy inserted in the certificate of insurance issued by complainant to Concrete Materials (which recites—"This is not an insurance policy") has the effect through the medium of estoppel, of creating in favor of one not a party to the original insurance contract, a liability for an event occurring after the policy had expired by its terms;—of creating in favor of a third party a liability that the insurer did not owe to its insured.

This court believes that the answer must be in the negative. It is the general rule that even though there may be a waiver in matters of forfeiture, because of the disfavor of forfeiture, yet courts are unwilling to utilize estoppel to create a new contract. Richardson v. Iowa State Traveling Men's Ass'n, 228 Iowa 319, 291 N.W. 408; Pierce v. Homesteaders Life Ass'n, 223 Iowa 211, 272 N.W. 543; Standard Accident Ins. Co. v. Roberts, 8 Cir., 132 F.2d 794; C. E. Carnes & Co. v. Employers Liability Assur. Corp., 5 Cir., 101 F.2d 739; 45 C.J.S., Insurance, § 674.

In this case, the action or events alleged to have created the new liability occurred in Iowa. The laws of Iowa are

applicable. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The Supreme Court of Iowa has said plainly that—"the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all." Pierce v. Homesteader's Life Ass'n, 223 Iowa 211, 217, 272 N.W. 543, 546, and is cited with approval as to that proposition in Richardson v. Traveling Men's Ass'n, supra.

In the Pierce case, 223 Iowa 212, 272 N. W. 543, the insurance membership certificate provided: "The contributions and protection cease at age sixty." The assured attained that age on March 3, 1933. She died on March 13, 1933. In September 1932 the full annual premium was paid in advance. Sometime in March 1933 the insurer mailed back one half the premium which was not accepted. It was claimed in the action that the acceptance of the full annual premium in 1932 for a period beyond the 60th birthday estopped the company from denying liability during the additional period. The court discussed the matter fully in support of its conclusion that the loss must have occurred while the insurance was in full force and effect, and in that discussion made the statement quoted above.

Were the rule otherwise, the complainant should prevail because the essential elements of estoppel are lacking. These were well stated by Sanborn, J., in Lewin v. Telluride Iron Works Co., 8 Cir., 272 F. 590, 598.

Here Concrete Materials obtained a policy of liability insurance from Employers in July 1949. The purpose of insured and insurer was to provide coverage for operations by its own or hired trucks or independent hauling contractors who might themselves have no such coverage. Those hired operators who had no insurance were covered and the cost defrayed by deductions from their pay. Those who furnished evidence that they had insurance, paid for excess coverage furnished by Employers but at the lower rate quoted above. The certificate in question was furnished to Concrete Materials at Claman's request and thereby reduced the amount of deductions from his pay. Both defendants admit in argument that Concrete Materials is fully covered. Its loss, if Claman is not now employed or is irresponsible, is the difference in the amount it would have deducted from Nov. 27, 1949, to Dec. 13, 1949, or as soon thereafter as it was informed of the error. It makes no alternative claim herein over against Claman for such amount.

The certificate was not a policy; it was furnished at Claman's request to describe the policy. It is possible, but is not decided, that Concrete Materials should have been put on inquiry as to why the policy was for a fractional period, since premiums are calculated on an annual basis. It would have been entitled to have the original policy furnished to it by Claman for either inspection or safe-keeping. It adopted this procedure. It is "fully insured by Employers irrespective of whether Claman had insurance of his own or not." Claman makes and can make no claim here because his insurance term had expired when the collision occurred. He owes to Concrete Materials the difference in premium rate to which he had apparently agreed in his initial hauling contract. When Concrete Materials recovers that difference from Claman it can assert no detriment or damage because the information it had sought was incorrectly given. To predicate on that uncertainty a finding that complainant must defend the two pending suits and save Concrete Materials harmless from a liability up to $25,000, on a policy to which it was never a party, and on a risk against which it admits it is fully insured, puts too great a strain on the doctrine of estoppel.

Insofar as Employers is concerned this court considers its position and rights subordinate to those of its codefendant and therefore not entitled to prevail. Both defendants sought to provide full coverage to and for Concrete Materials. Employers admits that its insured is "fully insured" by it. We have a situation therefore in which Employers is asking the court to relieve it from the performance of its primary obligation—the full protection of its insured. We can find no basis for

shifting the burden of that obligation, either in whole or in part, to the shoulders of complainant.

The court finds complainant entitled to the relief prayed and denies defendants' counterclaims. Complainant will prepare and submit a decree to such effect. Defendants except.