**KAHLER v. LIBERTY MUT. INS. CO.**

No. 14729.

United States Court of Appeals
Eighth Circuit.

June 15, 1953.

F. H. Durham, Minneapolis, Minn. (Durham & Swanson, and Thomas O. Kachel-

macher, Minneapolis, Minn., on brief), for appellant.

Maugridge S. Robb, Minneapolis, Minn. (Robb, Robb & Van Eps, Minneapolis, Minn., on brief), for appellee.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

GARDNER, Chief Judge.

Liberty Mutual Insurance Company brought this action against F. W. (Nick) Kahler to recover from him $7,500 indemnity, together with attorney fees and expenses, which amount it had paid in settlement of a judgment rendered against Remington Arms Company in an action brought against that company by the Administrator of the estate of Curtis Erickson, deceased, for damages on account of the death of said Curtis Erickson by wrongful act.

The facts and circumstances from which the litigation arose may be stated as follows: Kahler is in the business of conducting Sportsmen's Shows in Minneapolis, Chicago, St. Louis and other cities, and in connection with exhibitors puts on a vaudeville. The performances were accompanied by an orchestra employed by Kahler. One of the acts at his show held in Minneapolis beginning April 5, 1947, was known as "Bill and Fran Johnson, Two of the World's Greatest Marksmen," who were employees of the Remington Arms Company. The Johnsons performed on an elevated stage, shooting against a target about forty inches square. As they shot they were twenty-five to twenty-seven feet distant from the target. Back of the target, but somewhat to the left of the Johnsons, the orchestra was located. Kahler's orchestra leader agreed with the Johnsons to keep the members of the orchestra out of the firing line. The orchestra played as the Johnsons came on the stage and when they left the stage, but no music was played during the exhibition. As part of the act the Johnsons shot at the target with Mrs. Johnson hanging upside down, facing the target with her legs around her husband's neck. There was a wild shot which struck Erickson, one of the musicians, killing him.

The platform on which the Johnsons performed was rectangular in shape and extended in a generally easterly and westerly direction with the long sides running east and west and the short sides running north and south. The target was set on the short end so that the line of fire was easterly and westerly. Kahler installed ropes from the four corners of the platform to run easterly and westerly respectively so that the easterly and westerly lines of the platform were extended by means of these ropes to the adjacent permanent walls of the arena itself. Kahler had agreed that this roped-off area would at all times be kept clear of human beings. The body of decedent Erickson, following the fatal shot, was found between these ropes to the east of the platform. Johnson, who did the shooting, did not see the members of the orchestra and was not aware of the accident until after he finished his act. Kahler did not see the act but when he arrived the body of Erickson was between the ropes.

The administrator of the estate of Curtis Erickson, deceased, brought action against Remington Arms Company for damages and recovered judgment. Remington Arms Company held liability insurance in the Liberty Mutual Insurance Company and that company settled the judgment against Remington Arms Company and became subrogated to whatever rights or causes of action Remington Arms Company had against Kahler, and this action was brought based upon that claim of subrogation. It was the claim of the Insurance Company that Kahler for his financial benefit sought to enlist the services of Remington Arms Company; that he solicited Remington Arms Company to put on the exhibition above described as a part of his show; that the nature of the act was such that its performance would subject Remington Arms Company to potential liability; that as an inducement to Remington Arms Company to furnish the service it was agreed as follows: (1) that a danger zone be established and roped off creating an area for the permissible flight of bullets; (2) that all persons would be removed from such danger zone, and said zone kept clear during the performance of the service to be

rendered by Remington Arms; (3) that the actor and those responsible for him would be indemnified as against casualty resulting from the performance and services rendered and to be rendered for the benefit of defendant; (4) that the actor and those responsible for him would be protected by good and collectible insurance against any liabilities resulting from the performance of the service of the defendant; (5) that in fact there was such good and valid existing insurance. It was the Insurance Company's contention that Kahler had failed to perform these agreements; that he negligently failed to clear and maintain clear the danger zone; that he failed to provide liability insurance for Remington Arms; that he had by misrepresentation induced Remington Arms to put on the Johnson's act and hence was obligated to indemnify Remington Arms, to whose rights the Insurance Company had become subrogated. Further facts will be developed in the course of this opinion.

The action was tried to the court without a jury and resulted in findings of fact and conclusions of law in favor of the Insurance Company on all the issues. From the judgment entered pursuant to the court's findings of fact and conclusions of law Kahler appeals on substantially the following grounds: (1) there is no substantial evidence of any negligence of Kahler which caused or contributed to Erickson's death; (2) in any event his negligence was not co-equal with that of Remington Arms Company and not primary as the court found; (3) the representations by Kahler that he had "proper insurance to insure our public and clientele" did not make a contract because (a) it was too vague and indefinite and (b) there was no meeting of the minds; (4) because of Remington Arms' breach of its prior unconditional agreement to produce the Johnsons, it is estopped to take any advantage of any misrepresentation or fraud by Kahler; (5) there was no actionable fraud or misrepresentation by Kahler.

██ As the insurance company is maintaining this action as subrogee of Remington Arms, manifestly its rights are such only as accrued to Remington Arms. This is a diversity of citizenship action and hence the substantive law of Minnesota is applicable.

██ The court determined all of the controlling fact and law issues in favor of the plaintiff insurance company. In considering the question of the sufficiency of the evidence to sustain the court's findings we must view the evidence in a light most favorable to the plaintiff and we must assume that all conflicts in the evidence have been resolved in favor of the prevailing party.

██ It is first contended that there was no evidence of any negligence of defendant Kahler which caused or contributed to Erickson's death. Under the evidence it was the duty of defendant to keep the shooting area clear of human beings and not only to rope off such area but to assign and keep on duty guards to insure the absence of human beings in said safety zone. Immediately following the fatal shooting of Erickson his body was found inside the roped-off area and the evidence was sufficient to warrant the court in finding as it did that the defendant had failed in his duty to keep said zone free of the presence of human beings. It is urged however that even though the evidence might have been sufficient to prove negligence in this regard and that because of this negligence Erickson invaded the area which defendant had agreed to keep free of human beings and was struck by a bullet causing his death, yet this negligence was only co-equal to that of Remington and not primary negligence and hence Remington was not entitled to indemnity. The court however found that Kahler's negligence was primary and Remington's negligence secondary as between the parties. The action here is not between the injured party and the party alleged to have inflicted the injury, but the contest is between two parties, one of whom contracted with the other to perform acts which, had they been performed, would have prevented the injury and it is the law of Minnesota that duties created by contract when breached through negligence may give rise to actions ex delicto. Barron v. Liedloff, 95 Minn. 474, 104 N.W. 289. As between the parties to this action the proximate cause of the accident was the failure of the defendant to keep the safety

zone free from human beings. In the instant case between the actor and the defendant the actor had the right to rely on the defendant's performance of the duties he had agreed by contract to perform. True, plaintiff had the duty not to discharge its firearms in such a manner or in such a direction as to injure third parties. However, it had delegated the duty to protect third parties against such contingency to the defendant and the defendant had agreed to discharge that duty and as between the plaintiff and defendant the primary negligence was that of the defendant. As to third parties plaintiff could not have avoided liability on the charge of negligence by proof that it had delegated to a third party the duty to keep the danger zone free from human beings, but as between the parties here both of whom were tort-feasors as to third parties they were not in pari delicto. Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 201 F.2d 408; Lawrence v. Great Northern Ry. Co., D.C.Minn., 109 F.Supp. 552; Spaulding v. Parry, D.C.S.D.N.Y., 90 F.Supp. 564; Restatement on Restitution, Secs. 95, 95a; Fidelity & Casualty Co. v. Northwestern Telephone Exchange Co., Minn., 140 Minn. 229, 167 N.W. 800, 801. In the Fidelity & Casualty Co. v. Northwestern Telephone Exchange Co. case, supra, the Electric company and the telephone company used the same poles and each was under a duty to use them so as not to render their use unsafe to employees of the other. The telephone company was negligent in the use of the poles and an employee of the Electric company was injured as a result of that negligence. The court said that as to the employee both companies were liable. As to the right of the Electric company to recover from the telephone company for payment to the injured employee the court said:

"The primary duty of securing the wires and cables was upon defendant. Its neglect was the primary cause of the injury. The neglect of the Electric company, was as between the parties, secondary. Defendant must respond."

In Waylander-Peterson Co. v. Great Northern Ry. Co., supra, which was a case in which the substantive law of Minnesota was applicable we quoted with approval from the opinion of Judge Nordbye in Lawrence v. Great Northern Ry. Co., supra, in part as follows [109 F.Supp. 555]:

"But the Minnesota rule of contribution as between joint tort-feasors does not negative the principle of indemnity on other grounds. That is, where the parties are not in pari delicto and the injury results from the acts of one whose negligence is the primary, dominant cause of the injury, and if such negligence exposes another to liability, the former is liable to the latter in the full amount of the damages incurred by such act. The teachings of Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N.W. 698, and Fidelity & Casualty Co. v. Northwestern Telephone Exchange Co., 140 Minn. 229, 167 N.W. 800, fully sustain this view."

We think the court under the evidence was warranted in finding that Erickson was within the area which the defendant had by contract agreed to keep free from human beings during the performance of the Johnson act. We also think the court correctly concluded that as between the parties to this action defendant's negligence was primary negligence and the proximate cause of the accident.

This necessitates an affirmance of the judgment, but we add that a very careful consideration of the other contentions made by the defendant on this appeal convinces us that they are without merit and that all of the findings and conclusions of the court are warranted by the evidence and applicable law. A discussion of the other contentions would unduly extend this opinion and serve no useful purpose. The judgment appealed from is therefore affirmed.