C. E. HULLY and F. H. Wright, d/b/a a co-partnership under the name of Central Asbestos & Supply Company, Plaintiffs,

v.

ALUMINUM COMPANY OF AMERICA. Columbia Casualty Company and Eichleay Corporation, Defendants.

Civ. No. 1-60.

United States District Court S. D. Iowa, Davenport Division.

Aug. 8, 1956.

Wendell B. Gibson (of Gibson, Stewart & Garrett), Des Moines, Iowa, for plaintiffs.

Larned A. Waterman (of Lane & Waterman), Davenport, Iowa, for defendant Aluminum Co. of America.

Carl H. Lambach and Margaret Stevenson (of Lambach, Kopf, Stevenson & Christiansen), Davenport, Iowa, for defendant Columbia Cas. Co.

Alex M. Miller (of Holliday, Miller, Myers, Stewart & McDowell), Des Moines, Iowa, for defendant Eichleay Corp.

DAVIES, District Judge.

This action was brought by an independent contractor to recover a balance due for labor and materials which, after performance of the contract, was withheld as a set-off for an indemnifiable tort obligation paid by the employer.

Also parties to the action are another independent contractor hired by the same employer and an insurance company insuring the plaintiffs and the defendant employer. The plaintiffs and the other contractor, Eichleay Corporation, were employed under separate contracts by Aluminum Company of America (hereinafter called Alcoa) in the construction of a manufacturing plant near Davenport, Iowa. Both contracts, prepared by Alcoa (designated therein as Owner), contained identical printed provisions for indemnity and insurance as follows:

"Article 24. Liability To Others.

"The Contractor shall save and hold the Owner harmless from and against all liability, claims and demands on account of personal injuries, including death, or property loss or damage to others (including Contractor and employees of Contractor) arising out of or in any manner connected with the performance of this contract, whether such injury, loss or damage shall be caused by the negligence of Contractor, a subcontractor hereunder, Owner or otherwise and the Contractor shall at his own expense defend any and all actions based thereon and shall pay all charges of attorneys and all costs and other expenses arising therefrom."

"Article 25. Insurance. * * *

"B. Contractor shall, during the progress of the work, maintain * * * (b) Contractor's Public Liability Insurance: (c) Owner's Protective Liability Insurance: and (d) Automobile Liability Insurance. * * *

"D. The limits of liability provided in each such liability insurance policy shall not be less than $100,000 for injuries, including accidental death, to any one person, and subject to the same limit for each person, not less than $300,000 for any one accident involving two or more persons. * * * "

To comply with their contract, plaintiffs applied to defendant insurance company's Des Moines agent, Kenneth M. May, for the required insurance. Although they were unable to show May a complete and executed copy of the contract, they did furnish him with a letter to them from Alcoa dated August 4, 1947, containing a detailed statement concerning insurance requirements and enclosing copies of the printed general contract conditions including Articles 24 and 25. Without other counsel or advice plaintiffs relied upon May to take care of all their insurance needs under this contract, having for some years past relied upon him in connection with most of their previous jobs. Through May the defendant insurance company issued, for purposes of this contract, Manufacturers' and Contractors' Liability Policy C. N. A. 23933 naming Alcoa as insured, and Comprehensive Liability Policy C.N.D. 7936 naming plaintiffs as insured. All premiums were paid by the plaintiffs.

Policy C.N.A. 23933 was issued in accordance with the contract, although May stated that he believed it to be unnecessary double insurance. It was supposed to cover the following risk: "Division 3. Independent Contractors. Operations performed by independent contractors and *omissions* or supervisory acts *of the insured* in connection with the work performed for the named insured by independent contractors, during the policy period, other than maintenance and ordinary alterations and repairs on premises owned or rented by the named insured." (Italics supplied.) The insurance company by this policy agreed (in Coverage A—Bodily Injury Liability): "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the" above risk. The policy further stated an agreement "that as respects insurance afforded by this policy the company shall * * * defend in his name

and behalf any suit against the insured alleging such injury * * * and seeking damages on account thereof, *even if such suit is groundless, false or fraudulent*. (Italics supplied.)

The other policy, C.N.D. 7936, was an amended renewal of plaintiffs' existing comprehensive liability policy. The Alcoa contract being the largest ever had by the plaintiffs, one necessary amendment was made to increase the liability limits. However, though the policy had an exclusion making the insurance inapplicable "to liability assumed by the insured under any contract or agreement not defined herein", May failed to make a necessary policy endorsement regarding the Alcoa contract and Article 24 thereof. On at least one other previous job where plaintiffs were bound by a contractual indemnity provision, May had properly taken care of the policy endorsement to effect the desired insurance coverage. May stated, and perhaps believed mistakenly, that the indemnity risk was covered by a policy clause insuring against unknown hazards.

On November 24, 1948, while the policies under the Alcoa contract were in force, plaintiffs' employee Earl Barnes was injured in the course of his employment when struck by a crane negligently operated by an Alcoa employee in transporting an Eichleay employee to his place of work. Although negligence of Alcoa alone caused the injuries, there was sufficient connection with the respective contracts of the plaintiffs and Eichleay to make the indemnity provisions of Article 24 applicable to both contractors. Aluminum Co. of America v. Hully, 8 Cir., 1952, 200 F.2d 257 (applicability to plaintiffs); verdict of September 13, 1955 (applicability to Eichleay).

On April 6, 1949, Barnes commenced an action in Scott County, Iowa, District Court against Alcoa to recover damages for his injuries. Alcoa promptly gave notice of this action to plaintiffs and all the other defendants here, but none recognized an obligation to defend. Upon receiving notice of the Barnes action, plaintiffs sought out May who advised:

"Don't pay any attention to any of it. You are covered on everything." However, May later realized his error and found that nine other current contracts of the plaintiffs contained indemnity provisions upon which he had failed to secure insurance. Endorsements to cover these nine contracts were hastily executed, but May was disappointed in his expectation that he could persuade the defendant insurance company to give plaintiffs the coverage, which he admitted he should have given them, on the indemnity risk under the Alcoa contract.

The Barnes action was tried to a jury and resulted in a verdict and judgment of $20,000 for Barnes on December 14, 1949. On February 17, 1950, Alcoa paid $20,436.50 in satisfaction of the judgment, interest and costs. Alcoa's expenses in defending the action were $662.50 for disbursements and $5,500 for attorney fees. Alcoa proposed to deduct the $26,599 aggregate loss on the Barnes action from the $31,418.59 admitted balance it owed plaintiffs for labor and materials, but plaintiffs insisted upon full payment.

On April 19, 1950, plaintiffs commenced the present action in an Iowa state court to recover such balance, and the case was removed to this court. Inasmuch as the claims, counterclaim and cross claims of the parties all depend upon a determination of ultimate liability for losses in the Barnes action, there is one broad issue to decide. That is whether an insurance company issuing liability insurance to both an employer and an independent contractor in regard to one contract can take advantage of an exclusion in the contractor's policy exempting the company from liability where a *contractual indemnity running* from the contractor to the employer was not covered by that policy due to mistake or negligence of the insurance company's agent.

It is the opinion of this court that the insurance company is precluded by estoppel from taking advantage of such exclusion in the contractor's policy and that the company is liable in any event upon the employer's policy. Refor-

mation of the contractor's policy is not a proper remedy since there was no mutual intent or actual agreement of the parties to secure coverage for the indemnity liability risk. Vance, Insurance (3rd ed. by Anderson 1951), 471 n 3, 538 n 15. The parties did not understand or were unaware of the exclusion regarding this risk until after assertion of the Barnes claim. A second theory, waiver, is inapplicable since there was no unilateral intent imputable to the insurance company to relinquish a known right under the policy. Adams v. Hartford Fire Ins. Co., 1922, 193 Iowa 1027, 188 N.W. 823, 24 A.L.R. 182. In the absence of knowledge there is ordinarily no waiver of a right. Greco v. Continental Ins. Co., 1934, 219 Iowa 150, 257 N.W. 201. May, of course, had the desire to waive the exclusion after he realized its application, but he never purported to do so on behalf of the company. At the time he assured plaintiffs they were covered, May did not know (although he should have known) the effect of the exclusion. Reformation of the policy or waiver of the policy exclusion being unavailable as remedies, there is still the theory of estoppel.

Estoppel is the equitable rule preventing a party from taking a legal position prejudicial to another party whom he has induced by words or conduct to act in good faith reliance upon a misrepresentation of material fact. McClintock, Equity (2d ed. 1948), Sec. 31, pp. 79–81; see Restatement, Contracts (1932), Sec. 90; Restatement, Torts (1939), Sec. 894(1). Estoppel and misrepresentation are similar in their elements, but are complementary in operation: misrepresentation generally functions as a positive remedy or basis of action, whereas estoppel functions as a negative remedy or basis of defense. Prosser, Torts (2d ed. 1955), 529–530. The rule of estoppel is applicable where (1) an insurer or its agent misrepresents a fact material to the insurance contract, (2) the insured in good faith reasonably relies on such misrepresentation, and (3)

the insured would be prejudiced by failure of the insurer to give effect to the misrepresented fact. Vance, Insurance (3rd ed. by Anderson 1951), Sec. 88, pp. 528–530. Estoppel does not operate to create a new insurance contract, but simply to deny legal effect to a provision of the policy contract inserted for the benefit of the insurer. Manufacturers & Merchants Indem. Co. v. Claman, D.C. Iowa 1951, 96 F.Supp. 385.

An insurance company is estopped to take advantage of a condition which its agent by mistake or negligence has failed to handle properly in the policy. Wensel v. Property Mut. Ins. Ass'n of Waterloo, 1906, 129 Iowa 295, 105 N.W. 522; Mutual Ben. Life Ins. Co. v. Robison, 8 Cir., 1893, 58 F. 723, 22 L.R.A. 325. The mistake or negligence of the agent within the scope of apparent authority is the responsibility of the insurance company. Basta v. Farm Property Mut. Ins. Ass'n of Iowa, 1933, 217 Iowa 240, 252 N.W. 125; cf. I.C.A. Sec. 515.125 (insurance agent is the agent of insurance company). Where the company or its agent delivers to the insured a policy which is known, or should be known, to be defective, such conduct is a representation that the policy is valid and effective for the purpose intended. Dryer v. Security Fire Ins. Co., Iowa 1900, 82 N.W. 494; Vance, Insurance (3rd ed. by Anderson 1951), 533; cf. Quinn v. Mutual Benefit Health & Acc. Ass'n of Omaha, 1952, 244 Iowa 6, 55 N.W.2d 546. And the insured, if he is ignorant of the defect and has no special competence or experience in insurance matters, is privileged in Iowa to rely upon that representation without reading or being charged with knowledge of the contents of the policy. McComb v. Council Bluffs Ins. Co., 1891, 83 Iowa 247, 48 N.W. 1038; Lankhorst v. Union Fire Ins. Co., 1945, 236 Iowa 838, 20 N.W.2d 14; but cf. Preston v. Howell, 1934, 219 Iowa 230, 257 N.W. 415, 97 A.L.R. 1140 (rule as to other written contracts). The insured, by trusting in the skill and competence of the agent and paying the

premiums for expected protection, would be prejudiced if the insurance company were allowed to assert the condition avoiding liability. Eames v. Home Ins. Co., 1876, 94 U.S. 621, 630, 24 L.Ed. 298. Accordingly, in the instant case where plaintiffs applied for comprehensive liability insurance to cover all risks under their contract with Alcoa, furnished the insurance agent with complete information by exact copies of all material provisions of the Alcoa contract, and justifiably relied upon the agent who purported to supply *full coverage,* the insurance company is estopped from taking advantage of the policy exclusion as to a contractual indemnity risk which the agent negligently failed to provide for in the policy and which he mistakenly represented was covered by another policy clause insuring against unknown hazards.

 The defendant insurance company is thus subject to liability under the plaintiffs' policy C.N.D. 7936 for all losses in connection with the Barnes action. It is similarly subject to liability for such losses under Alcoa's policy C.N.A. 23933. These losses, having been caused by "omissions * * * of the insured in connection with the work performed for the named insured by independent contractors", were clearly covered by the policy insuring Alcoa.[1]

Hence the insurance company was obligated under this policy to defend the Barnes action. The company's neglect of the obligation to defend rendered it liable to Alcoa for the amount of the judgment as well as for all reasonable expenses and attorney fees of Alcoa incurred in its defense of that action.[2] Premium-collecting is not the only function of an insurance company.

 Although liable under policy C.N.A. 23933 to pay Alcoa the $26,599 aggregate loss in the Barnes action, the insurance company would not be subrogated to Alcoa's rights against Eichleay and the plaintiffs under the Article 24 indemnity provisions of their respective contracts. Even if the insurance company had a subrogation right of indemnity against plaintiffs, it would be valueless because the company is obligated to protect plaintiffs on this contractual indemnity under policy C.N.D. 7936; it could not recover from its own insured. But subrogation is inapplicable here, being an equitable doctrine by which an insurer required to pay a loss of the insured is given the benefit of whatever legal claims the insured may have against the party who caused and should be primarily liable for the loss.[3] Subrogation will not be applied to shift the loss where the insured is primarily responsible, as Alcoa is in the present case through the

1. Aluminum Co. of America v. Hully, 8 Cir., 1952, 200 F.2d 257 (Barnes injuries occurred *in connection with* the work); Hoven v. Employers' Liability Assur. Corp., 1896, 93 Wis. 201, 67 N.W. 46, 32 L.R.A. 388 (even under policy insuring employer *from liability for claims* of employees engaged in "operations *connected with the business* of iron and steel works", insurer was liable for injuries to regular employee caused by negligence of independent contractor in constructing an addition to the plant).

2. Jones v. Southern Surety Co., 1929, 210 Iowa 61, 230 N.W. 381; Commercial Casualty Ins. Co. v. Tri-State Transit Co., 1941, 190 Miss. 560, 1 So.2d 221, 133 A. L.R. 1510.

 The $5,500 attorney fees incurred by Alcoa in defense of the Barnes action are not unreasonable and will be allowed as an item of damages against the insurance company; but no recovery can be allowed to any of the parties for attorney fees in the present action, because liability does not extend beyond the requirements of a reasonable defense of the original action. Cf. Getchell & Martin Lumber & Mfg. Co. v. Employers' L. Assur. Corp., 1902, 117 Iowa 180, 90 N.W. 616, 62 L.R.A. 617 (no liability even for the failure, if reasonable, to appeal in original action).

3. Kahler v. Liberty Mut. Ins. Co., 8 Cir., 1953, 204 F.2d 804 (insurer subrogated to contractual indemnity right of insured against third party whose negligence was primary cause of loss).

 See, in general, 11 Appleman, Insurance (1944), Sec. 6502, pp. 293–297.

imputed negligence of its own employee.[4] In balancing the equities between the contractors and Alcoa, the equities of the contractors are superior because not only were they faultless in respect of the loss caused by Alcoa but they, and not Alcoa, paid for the very insurance which was intended to protect Alcoa on this loss. Certainly it would be unreasonable to hold that the parties intended placing upon the contractors ultimate liability for Alcoa's sole negligence.[5] Further, the insurance company here, having been paid by plaintiffs to insure Alcoa and having precipitated and perpetuated this litigation by refusing and failing to defend and protect Alcoa, comes before this court with hands somewhat less than clean and is not entitled to subrogation. McClintock, Equity (2d ed. 1948), 334–335; but see Maryland Cas. Co. v. Employers Mut. Liability Ins. Co., 2d Cir., 1953, 208 F.2d 731, 733–734.

Subrogation must be denied to the insurance company, and contribution is unavailable as well since there is no other party to this action with whom the company is co-obligor to pay the losses of the Barnes action. See Commercial Cas. Ins. Co. v. Hartford Acc. & Indem. Co., 1934, 190 Minn. 528, 252 N.W. 434, 253 N.W. 888; Globe Nat. Fire Ins. Co. v. American Bonding & Casualty Co., 1928, 205 Iowa 1085, 217 N.W. 268, 56 A.L.R. 463. While plaintiffs and Eichleay as to each other would be co-obligors having a secondary responsibility for these losses, the primary liability was intended to be borne by insurance. Since Eichleay's insurer has been discharged as a party to this action, the question whether it is a co-insurer from whom the defendant insurance company would be entitled to contribution is not before the court.

It necessarily follows that:

(1) On the contract claim against Alcoa, plaintiffs are entitled to recover $31,418.59.

(2) On the claim against the insurance company under policy C.N.D. 7936 plaintiffs are, or on the cross claim against the insurance company under policy C.N.A. 23933 Alcoa is, entitled to recover $26,599.

(3) On the cross claim against Eichleay for subrogation or contribution, the insurance company is entitled to no relief.

(4) On the cross claim against Eichleay, or on the counterclaim against the plaintiffs, under Article 24, Alcoa would

4. New York Title & Mortgage Co. v. First Nat. Bank, 8 Cir., 1931, 51 F.2d 485, 77 A.L.R. 1052, certiorari denied, 1931, 284 U.S. 676, 52 S.Ct. 131, 76 L.Ed. 572 (insurer not subrogated to insured loan agency's right of indemnity against innocent bank, where loss was caused by negligence of agency and fraud of its representative); United States F. & G. Co. v. First Nat. Bank in Dallas, 5 Cir., 1949, 172 F.2d 258 (insurer not subrogated to insured depositor's right of indemnity against innocent bank, where loss was caused by fraud of depositor's employee); American Surety Co. v. Bank of California, 9 Cir., 1943, 133 F.2d 160 (same); cf. Baker v. American Surety Co., 1916, 181 Iowa 634, 159 N.W. 1044 (surety on union treasurer's bond not subrogated to obligee union's right of indemnity against innocent bank, where loss was caused by fraud of the union's treasurer); Builders & Mfrs. Mut. Cas. Co. v. Preferred Automobile Ins. Co., 6 Cir., 1941, 118 F.2d 118 (subrogation is inapplicable where loss was caused by negligence of insured); see Langhorne v. Capital Fire Ins. Co., D.C.Minn.1944, 54 F.Supp. 771, 780, affirmed, 8 Cir., 1945, 146 F.2d 237 (subrogation is not applicable to the right of insured vendor of realty destroyed by fire to recover balance owed by purchaser under contract, the subrogation clause of the policy contemplating "only claims against persons causing the loss").

Also see Black v. Chicago Great Western R. Co., 1919, 187 Iowa 904, 174 N.W. 774 (subrogation is never allowed to benefit a wrongdoer or promote injustice).

5. See Employers Casualty Co. v. Howard P. Foley Co., 5 Cir., 1946, 158 F.2d 363, 365 (distinguishable from the present case by the fact that injuries to subcontractor's employees by negligence of insured contractor, while the men were preparing for work, were held to be outside the scope of the contract under which the subcontractor was bound to indemnify the contractor).

be entitled to recover $26,599 in the event of the insurance company's failure to satisfy the obligation.

The ultimate result and the opinion of this court is that Alcoa is entitled to judgment for the sum of $26,599 plus interest and costs against the insurer, Columbia Casualty Company; and the plaintiffs are entitled to judgment against Alcoa for $31,418.59 and costs (but without interest, in accordance with stipulation).

Counsel for plaintiffs herein will prepare and submit forthwith findings, conclusions and order effectuating this Memorandum Opinion.

It will be so ordered.