RAULSTON et al. v. MUTUAL BEN. HEALTH & ACCIDENT
ASS'N.—118 S. W. (2d) 881.

Eastern Section, at Knoxville. January 15, 1938.

Petition for Certiorari denied by Supreme Court, May 27, 1938.

102

Raulston & Raulston, of South Pittsburg, for complainants.
Sizer, Chambliss & Kefauver, of Chattanooga, for defendant.

LLOYD S. ADAMS, S. J. The original bill in this cause was filed in the Chancery Court of Marion County, Tennessee, by the complainants as guardian of William M. Raulston, seeking to enforce payment under a health and accident insurance policy issued to William M. Raulston, the assured, by the defendant Association in January, 1933, providing for payment of monthly indemnity of $25 for total loss of time due to a non-confining illness, which totally disabled the assured. It is averred that William M. Raulston became disabled by reason of nephritis and high blood pressure on or about the 20th day of June, 1936, and since that time has been unable to perform any physical labor and follow any gainful occupation.

The defendant answered admitting the issuance of the policy but denying liability on two grounds: (1st) That the said William

M. Raulston was not totally disabled within the meaning of the policy; (2nd) that if he was disabled, his disability was due to a mental derangement, and that under the terms of the policy no recovery could be had.

Defendant's answer was later amended interposing the further defense that the insurance policy expressly excepts any disability suffered by the assured "while suffering from insanity or mental infirmity," and avers that the alleged disability, which is the subject matter of the suit, arose and occurred during the time the assured was suffering from insanity or mental infirmity, and that under the express condition of the policy of insurance, there was no liability upon the part of the insurer for said alleged disability.

The Chancellor found and decreed that the assured, William M. Raulston, is totally disabled within the meaning of the section of the insurance policy upon which the suit was brought, but that he is not entitled to recover because the disability upon which the suit was brought occurred while the insured was suffering from insanity or mental infirmity, as provided under "Additional Provisions," Section (a), which will be hereinafter quoted, and the original bill was accordingly dismissed at complainants' cost.

Complainants prayed and were granted an appeal, and have assigned the following errors:

I. The court erred in holding and decreeing that the insured was not entitled to recover under the provisions of the policy.

II. The court erred in holding that the proper construction of section a of "Additional Provisions" of the policy would preclude recovery by one who became mentally infirm by reason of his physical disability.

III. Under the proof in the case showing that nephritis or Bright's Disease, alone, from which the insured was suffering, would incapacitate him from carrying on a gainful occupation, it was error for the court to hold that subsequent mental infirmity due to that disease would preclude a recovery under the provisions of section a of "Additional Provisions" of the policy.

IV. The court erred in holding that a true construction of the provision "This policy does not cover death, disability, or other loss *sustained* while suffering from insanity or mental infirmity" is: "This policy does not cover death, disability, or other loss *maintained* while suffering from insanity or mental infirmity," and that the word "maintained" might be substituted for the word "sustained," and further holding that such words might be used interchangeably without affecting the true meaning of the policy.

Complainants' principal witness, Dr. S. N. Anderson, a resident of South Pittsburgh, Tennessee, who has been practicing his pro-

fession since his graduation from Vanderbilt in 1915, testified that he had known William M. Raulston practically all his life; that he examined the assured in the early part of June, 1936, and at which time he was suffering from nephritis, and that he had treated him weekly since that time; that his blood pressure was high but that was caused by the kidney trouble; that the assured's loss of weight was due to the kidney ailment; and that the assured was eccentric and not mentally normal, but that he would not say he was insane; that his mental condition was attributable to the diseased kidneys; that if the assured's mind was normal his physical disability alone would prevent him from carrying on a gainful occupation.

The testimony of Dr. Anderson is corroborated by Dr. J. D. Henderson and Dr. E. S. Clayton, both of Knoxville. All these witnesses testified in substance that the kidney trouble was the primary cause of the disability and the mental condition was secondary.

Defendant's witness, Dr. Killebrew, of Chattanooga, a neurologist, testified that he made a thorough examination of the assured and that he found no pus cells or infection from either kidney, but did find a slight trace of albumin, and in a general way contradicts the finding and diagnosis of the doctors introduced by complainants, but on cross-examination testified as follows:

"Q. Doctor, if this patient had been strong physically, able to carry on his usual work up until June of last year, or some time prior thereto, and since that time his condition had been such he could not do any work that required physical exertion, you would say there was something wrong with him, wouldn't you? A. Yes, if, on that physical exertion, it showed definite evidence, by urinary findings, that there was an increase of his albumin and other urinary trouble. In that type of case it is almost impossible, without that period of observation, to know exactly what degree he had in kidney impairment, if any. That type of patient, if he lived right here in town where you could observe him over a period of time, you could determine to what degree his albuminuria was significant, or to what degree it impaired his health, or whether it was a potential menace to his health; but from one examination the only thing I can tell you is that there is no urological finding there sufficient to justify disability at the time of the examination."

The record discloses by substantial proof, uncontradicted, that the assured's condition was as described in the above question.

From the above quoted question and answer it is observed that Dr. Killebrew's testimony was limited to the urological finding at the time of the examination. The following letter from Dr. Killebrew to the defendant was introduced as evidence:

"Dec. 8, 1936

"Mutual Benefit Health & Accident Asso.,
"Tenth Floor Sterick Building
"Memphis, Tennessee
"Dear Sirs:

"Mr. W. B. Raulston came into my office earlier than the appointed time and was examined by Dr. Gay my associate, and was to return with Dr. Anderson to see me at the appointed time. The examination that was conducted at that time was necessarily of the superficial nature because of the limited time at our disposal. We discovered however, the following positive findings: A tachycardia of 118, a hypertension of 150/90, a slight dilation of the heart, a definite albuminuria, and the presence of numerous pus cells in the uncentrifuged specimen. The right kidney region was tender to palpitation and to deep percussion.

"Mr. Raulston, we feel, both as a result of the physical findings, and the history in his case, is unable to carry on any gainful occupation at this time. A more thorough and searched examination would doubtless discover the cause of the pus that is now present in the urine. This however, would require more time than was at our disposal during his brief visit. It would require a cystoscopic examination with X-rays to get at the basis of this trouble, and Mr. Raulston did not feel that he had time for this service.

"Very respectfully yours,
"JBK:C Jos. B. Killebrew, M. D."

Dr. Killebrew in testifying explained that his letter was based on a cursory examination made by his associate, Dr. Gay, and that the only way he could arrive at a diagnosis in the case would be by a cystoscopic and X-ray examination. Nevertheless, from a cursory examination it was the opinion of Dr. Killebrew and his associate that the assured was unable to carry on any gainful occupation at that time.

An ex parte statement was made by Dr. Frederick E. Marsh, and by consent was filed as evidence in behalf of defendant. His statement is to the effect that on March 25, 1937, he began the examination of the assured and completed the examination on the following day; that he found a trace of albumin and occasional pus cells. That in his opinion the assured was able to do ordinary work and as far as he could determine his physical condition was normal.

It is contended by defendant that the complainants' witnesses were general practitioners while Dr. Killebrew is a specialist. However, Dr. Killebrew frankly states that his findings were limited to the one examination and that the extent of the kidney impairment or condition of a patient of this characer could be better determined where he could be observed over a period of time. Dr. Anderson had this opportunity, as well as the lay wit-

nesses, to observe this man's physical condition, and we think it is clearly proved by a preponderance of the evidence that the assured was totally disabled within the meaning of the policy, as decreed by the Chancellor.

Liability of the defendant, therefore, depends upon a proper construction of Section (a) of "Additional Provisions" of the policy, which is as follows:

"This policy does not cover death, disability, or other loss sustained in any part of the world except the United States and Canada, or while engaged in military or naval service in time of war, or any act of war, or while the Insured is not continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself; or received because of or while participating in aeronautics, except as provided in Part H; or while suffering from insanity or mental infirmity; or while the Insured is suffering from syphilis or venereal disease. Disability resulting from tuberculosis or heart trouble shall be covered only if the disease originates after the policy has been in continuous force for the six (6) preceding months."

That part of the above provision pertinent to this inquiry is. "This policy does not cover death, disability, or other loss sustained . . . while suffering from insanity or mental infirmity; . . ."

Defendant insurance company contends that regardless of the cause of the mental infirmity and regardless of whether it preceded or followed the disability, the complainants cannot recover because indisputably the disability occurred while the assured was suffering from mental infirmity.

One of the principal cases relied upon by the insurance company to support its contention is Moss v. Mutual Benefit Health & Accident Association, Supreme Court of Utah, April, 1936, reported in 89 Utah 1, 56 P. (2d) 1351. The following quotation from this case is taken from defendant's brief (page 1353):

"In excluding from the policy any loss of time or disability resulting from insanity, the policy did not in any manner limit the word 'insanity' to any particular type or kind, nor as arising from any particular cause. It did not indicate that insanity caused by or resulting from a disease contracted during the policy period was within the policy, but that insanity from congenital, accidental, or other causes was outside its operation. The language taken in its ordinary meaning permits no recovery for loss or disability because of insanity, whatever the cause of the insanity may have been. Any other construction placed on this language would require us to write into the contract something that is neither expressed nor implied; namely, that no loss of time is payable on

account of insanity resulting from accidental or congenital causes, but is payable if the insanity results from a disease contracted during the policy period. Our duty is to construe and enforce the policy as written. We may not make a new contract on different terms for the parties. Undoubtedly the amount of premium was fixed with reference to the scope of the policy. Where the insanity is the sequela of a disease contracted during the policy period and loss of time sustained because of the insanity, it is excluded from the operation of the policy by the provision (a) above quoted, the same as insanity from any other cause.''

 We think this case clearly points out the controlling factor in the construction of the provision involved in the instant case: If insanity is the consequence or result of a disease contracted during the policy period, and loss of time is sustained ''because of insanity'' the time is excluded. But if the assured is physically disabled by the disease within the meaning of the policy and is not able to follow a gainful occupation, the fact that he becomes mentally infirm does not deprive him of the benefits to which he is otherwise entitled.

Defendant refers to the case of Travelers' Protective Ass'n v. Prinsen, 291 U. S. 576, 54 S. Ct. 502, 78 L. Ed. 999. While this is a very interesting discussion of accident insurance policies, it involves ''participation'' in moving explosives, and does not support defendant's contention in the instant case.

If defendant's construction of the clause of the policy in question is to be accepted, then if the assured is disabled by reason of heart trouble or tuberculosis after the policy has been in continuous force for six months, as provided by Section A of Additional Provisions, and later the assured should become insane, the assured would be denied payment during the period of mental disability, even though physically disabled by reason of tuberculosis or heart trouble. This is not the logical construction of the language used in the policy.

We think it was the clear intention that if the assured contracted a disease or was injured while insane, the disability would be excluded and not compensable. But if the disease in its inception is not totally disabling but is progressive and ultimately results in total disability, and the ravages of the disease destroys the physical and the mental faculties as well, but the assured is totally disabled physically and the disease is the proximate cause of the disability, the fact that the same disease has caused the assured to become mentally infirm would not preclude a recovery. This conclusion finds support and is in accord with an opinion by Mr. Justice McKinney in the case of Conrad v. Accident Insurance Company, 141 Tenn. 14, 206 S. W. 34. That case involved the construction of a paragraph of an insurance policy providing in substance

that in event of disability resulting from hernia, among other things, the limit of complainant's liability should be a sum not exceeding, etc. Insanity appeared as one of the exemptions in that paragraph, and the conclusion of the Court in that case is equally applicable to the instant case. It was held that a special provision in an accident insurance policy excepting disability due to hernia does not relieve the insurer from liability where the proximate cause of the disability was the accidental injury which resulted in hernia. This principle will be found discussed in an elaborate annotation in 108 A. L. R., beginning on page 21.

We think the Chancellor correctly held that the language used in the contract is unambiguous and is to be given its ordinary meaning in the interpretation of the contract, but we think he was in error in substituting the word "maintained" for the word "sustained." These two words are not synonymous. The ordinary use of the word "maintain" implies an effort or will to hold or keep in a particular state or condition; that is, to support, uphold, to keep up, or not suffer to fail or decline. There certainly can be no implication of a will or desire upon the part of the assured to become or continue mentally unbalanced. The word "sustained" as used in the policy is not intended to convey the idea of maintaining at length without interruption, but imparts the happening of an event, such as sustaining a loss or sustaining an injury. The controlling words are "sustained . . . while suffering." This language clearly has reference to the happening of an accident or being stricken by disease while already afflicted or suffering from mental disability. The mental disability must precede the happening of the disabling event before payment is excluded under this exception. It would be an unwarranted stretch of this language to make it applicable to exclude physical disability from nephritis that happened also to affect the mentality. The proximate cause of the disability is nephritis.

It is hardly necessary to invoke the rule that all provisions which tend to limit the liability of the insurer should be construed most strongly against the insurer, who prepared the contract and for whose benefit they are inserted. Satterfield v. Inter-Ocean Casualty Co., 159 Tenn. 531, 19 S. W. (2d) 229. And we would not presume to change or write a new contract for the parties, but if the insurer had intended to exclude or suspend the payment of benefits during insanity it could have provided in appropriate language that payment of disability benefits would be suspended or discontinued in event the assured should become insane or mentally infirm after commencement of the physical disability.

The defendant has invoked the doctrine of judicial estoppel upon the theory that on May 25, 1936, a petition was filed in the County Court of Marion County, Tennessee, by F. P. Raulston,

R. L. Raulston, Jeannette Raulston, and S. L. Rogers, against W. M. Raulston, the assured in the instant case, averring that he had become a person of unsound mind so that he did not have capacity sufficient for the governing of himself and property. This petition was sworn to by all the petitioners. This petition bears the endorsement: "Approved May 28, 1936 W. M. Abels, County Judge, Marion County." There appears in the record a certified copy of the proceedings in the County Court on the above petition, showing that Frank Raulston and Leonard Raulston were appointed guardians of the person and property of W. M. Raulston, because of his minority. There is nothing in the certified copy of the minutes of the Court to indicate that guardians were appointed because of insanity. Assuming that this was a clerical error, we are of the opinion that W. M. Raulston, the incompetent, cannot be charged with the sworn statements contained in the petition filed in the County Court. However, this becomes immaterial in view of the fact that the preponderance of the proof in this record shows that W. M. Raulston prior to this illness was mentally sound, and that his present mental infirmity, which is temporary, is the result of the nephritis from which he is suffering. The nephritis must necessarily have preceded the mental disorder. Therefore, regardless of arbitary dates fixed, it is clearly apparent that both the physical disability and the mental infirmity are attributable to the diseased kidneys, and that the kidney infection preceded the mental disturbance. The fact that the petition was filed on May 25, 1936, to have a guardian appointed, in view of the preponderance of the proof in the record, does not establish as a positive and uncontroverted fact that W. M. Raulston was insane or mentally infirm prior to the physical disability caused by nephritis The reverse of this is supported by the weight of the evidence.

It results that the assignments of error will be sustained, and the decree of the Chancellor reversed. A decree will be entered ordering the defendant to pay to the complainant the sum of Twenty-five Dollars ($25) per month from June 20, 1936, to continue during the period of disability as provided in the policy, and the cause will be remanded to the Chancery Court of Marion County, there to be retained on the docket for the enforcement of this decree.