E. K. HARDISON SEED COMPANY, Appellant, v.
CONTINENTAL CASUALTY COMPANY, Appellee.
—410 S.W.(2d) 729.

Middle Section. August 26, 1966.

Certiorari Denied by Supreme Court, January 16, 1967.

646

Waller, Lansden & Dortch, Robert G. McCullough, Nashville, for appellant.

Boult, Hunt, Cummings & Conners, Joseph G. Cummings and Edwin F. Hunt, Nashville, for appellee.

HUMPHREYS, J. E. K. Hardison Company upon being sued by a customer for an alleged breach of warranty in the sale of lima bean seeds, called on Continental Casualty Company, its insurer under a comprehensive general liability insurance policy, to defend. Continental declined, contending it had not insured against loss or damage on account of breach of warranty. Whereupon suit was brought in which relief was sought upon three theories: first, for a reformation of the policy so as to provide coverage for any liability of the Seed Company

for its alleged breach of warranty; second, for a declaratory judgment that Continental was estopped on account of statements made by its general agent to deny that its policy afforded coverage for damages for breach of warranty; third, that the insurance policy, in insuring against products hazards, insured against hazards resulting from a warranty of goods or products of insured. The answer put all these contentions at issue.

The Chancellor dismissed the suit with a memorandum considering and rejecting the three contentions.

On appeal the Seed Company relies upon its three theories of liability and assigns errors accordingly.

Briefly, the facts are: The Seed Company through its president, Frank T. McCoy, Jr., had for many years bought its insurance through McKee, Oliver & Geny, General Agents for Continental, with practically all of this business being conducted with one agency partner, Mr. Charles F. Geny. Mr. McCoy discussed the Seed Company's insurance coverage with Mr. Geny on a number of occasions extending over several years and it was his understanding from these conversations that he had full coverage for the business operation, Geny assuring him of this. Both McCoy and Geny agreed there was no discussion concerning breach of warranty coverage. And, it appears from Geny's testimony that Continental does not write this coverage and that it is not available in Tennessee.

In 1958, the Seed Company was sued by a customer "for breach of contract and damages". Mr. McCoy had been advised of the possibility of such a suit and its basis, failure of certain seed to germinate, and had notified counsel for the Casualty Company. This counsel required

certain information from Mr. McCoy concerning the claim but made no statement with respect to coverage. When a summons was served in that case on the Seed Company, its counsel immediately notified the Casualty Company's counsel thereof, who took charge of the case. No question was raised at that time as to whether the policy afforded coverage although Mr. McCoy discussed the case with the Casualty Company's attorney and was told it was being handled and there was no need for him to worry. Mr. McCoy testified that if any question had been raised with respect to coverage he would have gotten it from Mr. Geny or someone else. The suit was ultimately dismissed for failure of plaintiffs to file a declaration.

There are certain letters in the file written by Mr. Cummings, counsel for the Casualty Company with respect to this suit which indicate the question of coverage was not closed as far as the Casualty Company was concerned since the summons showed the suit was for breach of contract "and damages".

In April, 1961, the Seed Company sold 20,000 pounds of Henderson bush lima bean seed to one Ray Jones, Jr., of Dyersburg. In August, 1961, the Seed Company became aware of the possibility of a claim growing out of this sale and Mr. McCoy notified Mr. Geny. Thereafter the claim was investigated by the Casualty Company. Sometime subsequent to January 31, 1962, Frostreat Frozen Foods, Inc., sued the Seed Company, and Mr. Geny upon being notified picked up the copy of the summons and declaration. This declaration alleged Frostreat Frozen Foods, Inc., had purchased 20,000 pounds of seed represented by an employee of E. K. Hardison Seed Company to produce a green lima bean. That, instead, the seed produced a very high percentage of white or creamy white

lima beans which were unsuitable for plaintiff's purposes resulting in damages to it of $100,000.00. Subsequent to the suit there were discussions between Mr. McCoy and Mr. Geny in which Geny reiterated that the policy provided full and adequate coverage and that the claim was in the policy's scope and limit. Subsequently, Mr. McCoy was advised by counsel for the Casualty Company that it would not defend the action. So this suit was brought.

After the cause was heard, the Chancellor filed a memorandum opinion holding the Seed Company was entitled to no relief and that its bill should be dismissed. On the issues of estoppel and reformation the Chancellor found that although the Seed Company had been advised the policy furnished the broadest and best coverage possible, there had been no discussion between the parties concerning coverage for breaches of contract or warranty, and that at the time the policy was written it was impossible to secure in Tennessee an insurance policy which would insure against breaches of contract or warranty. That complainant could not have gotten a policy which furnished it better or broader coverage, so it was not entitled to reformation, nor was defendant estopped to deny liability.

On the issue whether the alleged liability for breach of contract or warranty was covered by the policy as written, the Chancellor construed the policy to require payment of damages which the Seed Company would be obligated to pay where this liability arose on account of injury to or destruction of property caused by accident, after possession of the product sold had been relinquished to others by the named insured. The court then held that the only thing that had occurred which could possibly be

termed an accident was the selecting and furnishing of the wrong seed to the customer, which had not occurred after the possession of the goods or products had been relinquished by the named insured to the customer, and that there had been no injury to or destruction of property after relinquishment of possession of the seed to Frostreat. On this basis, the court held the policy of insurance did not insure against liability resulting from the loss alleged to have been sustained by Frostreat.

Dealing first with the question whether the insurance policy should be reformed, our answer is in the negative. While in a proper case a bill may reform a written policy after loss has actually happened, Phillips v. North River Insurance Co., 14 Tenn.App. 356, it is fundamental that the same rules applying generally to the reformation of a written instrument by a court of equity apply to the reformation of an insurance policy. So that a court of equity will not reform a policy except upon clear, cogent and convincing evidence of both the mistake and of the antecedent agreement with respect to which the mistake was made. Jones v. Jones, 150 Tenn. 554, 266 S.W. 110; Battle et al. v. Claiborne, 133 Tenn. 286, 180 S.W. 584; Myrick v. Johnson, 25 Tenn.App. 483, 160 S.W.2d 185; Hayes v. Travelers Ins. Co., 10 Cir., 93 F.2d 568, 125 A.L.R. 1053 This, of course, implies there must have been an antecedent agreement that was not incorporated in the written instrument to be reformed and that a mistake was made in the integration of the formal contract, and not with respect to the treatying between the parties during which their minds were meeting on the contract's contents.

It is, of course, evident that when these rules are applied to the proof there is no basis for a reformation of

the insurance policy. There is no suggestion the policy does not contain, by reason of accident or mistake, antecedent agreements with respect to breach of warranty coverage. To the contrary, both sides agree breach of warranty coverage was never suggested, or discussed. And, in our opinion the general statements attributed to Geny as to the coverage, its extent and nature, taken as true, do not amount to an agreement to extend coverage beyond the terms of the policy, or to afford coverage for damages beyond the existing terms of the policy. This being the case, there is nothing to add to the policy by way of reforming it, and so relief on this basis must be denied.

With respect to the estoppel issue, we agree with the Seed Company there are cases in which the doctrine of estoppel will operate so as to allow an insured to recover against his insurer. As said in Hulley v. Aluminum Co. of America, D.C., 143 F. Supp. 508, cited by the Seed Company, ''An insurance company is estopped to take advantage of a condition which its agent by mistake or negligence has failed to handle properly in the policy''.

However, in keeping with the doctrine many times enunciated and never departed from that estoppel is available to protect a right, but never to create one (Henry County v. Standard Oil Co., 167 Tenn. 485, 71 S.W.2d 683, 93 A.L.R. 1483; Couch v. Couch, 35 Tenn. App. 464, 248 S.W.2d 327), we have no case in Tennessee in which the doctrine of estoppel was made the basis of recovery except where the loss was within the coverage provided by the insuring clauses of the contract. Dickens v. St. Paul Fire & Marine Ins. Co., 170 Tenn. 403, 95 S.W.2d 910; Baird v. Fidelity-Phenix Fire Ins. Co., 178 Tenn. 653, 126 S.W.2d 384, 140 A.L.R. 1226; Commercial

Standard Ins. Co. v. Hall, 35 Tenn.App. 394, 245 S.W.2d 775; T. H. Hayes & Son v. Stuyvesant Ins. Co., 194 Tenn. 35, 250 S.W.2d 7; Hulley v. Aluminum Co. of America, supra, and Henry v. Southern Fire & Cas. Co., 46 Tenn. App. 335, 330 S.W.2d 18.

■ So, in order for there to be a recovery on the basis of an estoppel, a paramount condition must be met, the acts of the agent relied on for the estoppel and the estoppel arising on account of these acts must result in a liability which would be within the insuring clauses of the contract.

With respect to this subject 45 C.J.S. Insurance sec. 674 at page 616, says the following:

"Extension of risk. As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Accordingly, it has been held by the weight of authority that waiver or estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, or a loss or risk, which by the terms of the policy is expressly excepted or otherwise excluded. As has sometimes been said, the doctrines of waiver or estoppel cannot be successfully invoked to create a primary liability, or a liability for a benefit not contracted for at all."

■■ Without specifying any particulars, the amended original bill, on this proposition, prays "for a declaratory decree that the defendant is estopped to deny that said comprehensive general liability policy issued complainant affords complainant protection against

claims for damage for breach of contract or warranty''. Since as we have said the coverage of a policy cannot be extended beyond its terms by the doctrine of estoppel there was no error in the Chancellor's decree denying the particular relief thus prayed for.

This brings us to a consideration of the first assignment of error, whether the policy as written affords coverage. In its brief, the Seed Company particularizes the policy provisions on which it relies as follows:

"This insurance policy which is the subject of this litigation is a Comprehensive General Liability Policy which also provides insurance against 'Products Hazard.' The pertinent provision of the policy with respect to the liability insured against is as follows:

'Coverage B—Property Damage Liability—To pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.' (R. 74)

The exclusion provisions of the policy provide in pertinent part as follows:

'This policy does not apply: (a) to liability assumed by the insured under any contract or agreement except (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products;' (R. 74)

The Products Hazard coverage, which is distinct from and in addition to the property damage coverage, is defined in the policy under the heading 'Conditions', paragraph 3(c), as follows:

'(c) Products Hazard. The term "products hazard" means (1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold; * * *.'

After stating its reliance the Seed Company argues that by eliminating the double negative ("not" and "except") in the exclusionary language, the policy would read "This policy does apply (2) as respects the insurance which is afforded for the products hazard, a warranty of goods or products."

████ Proceeding under Raulston v. Mutual Benefit Health & Acc. Co., 22 Tenn.App. 101, 118 S.W.2d 881, requiring a construction in favor of the insured, and giving due regard to the fact that the present policy was characterized by Mr. Geny as the ultra policy of liability coverage a characterization commented on in Bauman v. Royal Indemnity Co., 36 N.J. 12, 174 A.2d 585, 91 A.L.R. 2d 535, as further reason for construing exclusions and conditions against an insurer, we yet are faced with the proposition that the insurance coverage is limited to such damages as the insured is legally obligated to pay

"*because of injury to or destruction of property,* including the loss of use thereof, caused by accident", and we are simply unable to bring ourselves to accept the proposition that Frostreat's suit against the Seed Company involves accidental injury or destruction of property. Frostreat's declaration alleges:

"Sometime in the fall of 1960, an agent and representative of the defendant came to the plaintiff's office in Dyersburg, Tennessee, soliciting an order for green baby lima bean seed; and plaintiff was assured that the seed to be furnished would produce an all-green lima bean when fully matured and brought in by the farmer for processing and freezing. That the defendant's salesman and representative was specifically advised that plaintiff would require seed that would produce an all-green lima bean when harvested, and said salesman and representative of the defendant while acting in the course and scope of his employment and in the furtherance of the business of the defendant, E. K. Hardison Seed Company represented that the seed to be furnished by defendant would produce such an all-green lima bean and not a creamy-white lima bean. Acting upon these representations, plaintiff purchased twenty thousand pounds of green baby lima bean seed which the salesman and representative of the defendant described and read a description from a seed catalogue stating that the matured bean would be all green in color.

That the seeds purchased from the defendant were delivered to farmers in the area in accordance with the usual custom and practice, with the understanding that the farmers would pay for the seed when they vined, and that the matured lima beans would be pur-

chased by plaintiff for processing at the price of seven cents (7¢) per pound.

In the early part of August, 1961, when the first limas were vined and brought in, plaintiff found a very high percentage of them white or creamy-white, and brought this to the attention of the defendant. Defendant requested the plaintiff not to abandon the beans in the fields and to have them harvested and brought to plaintiff's plant in order that they might be processed and sold for the best price obtainable. The plaintiff has not been able to sell these lima beans, which turned out to be grade 'C', in spite of its best efforts to find a market. By shipping air mail samples to prospective customers and otherwise, plaintiff has sold a portion of said lima beans at a substantial loss to it and has a large quantity of them on hand for which no market can be found." Tr. p. 71.

Agreeing with the definitions of an accident as made by the Western Division of this Court in American Employer Ins. Co. v. Knox-Tenn. Equip. Co., 52 Tenn.App. 643, 377 S.W.2d 573, it must be conceded, in fact cannot be denied, that the real basis of Frostreat's suit, which in this present proceedings determines Casualty's liability, is a breach of contract or warranty growing out of a misrepresentation of a quality certain seed were supposed to have. There is no suggestion that Frostreat did not get the seed it ordered, as in American Employer Co. v. Knox-Tenn. Equipment Co., supra, Knox-Tenn. did not get the size bit it ordered. Nor, is there any suggestion the Seed Company ignorantly or accidentally shipped some other seed than that which was ordered. In fact, there is simply nothing to suggest an accident, There is simply an alleged misrepresentation of quality. So, unless

every unfulfilled warranty or representation is an accident, we must hold that Frostreat's declaration describes a plain, clear, classical case of breach of warranty involving no element of accident whatsoever.

 But this is not all. The coverage provision relied on by the Seed Company also expressly provides that the insurer's obligation is to pay only for damages caused by accident "because of injury to or destruction of property,". Since this provision is plain and unambiguous, it must be applied as it reads. As said in Standard Life Ins. Co. v. Hughes, 203 Tenn. 636, 315 S.W.2d 239; Brown v. Tennessee Auto Ins. Co., 192 Tenn. 60, 237 S.W.2d 553, the courts cannot create an ambiguity where none exists. Also see United States Stove Corp. for Use and Benefit of Henderson v. Aetna Life Ins. Co., 169 Tenn. 264, 84 S.W.2d 582. So, giving to the words "injury to or destruction of property" their ordinary everyday meaning, we are unable to bring ourselves to the conclusion that any accidental injury or destruction of property is involved in Frostreat's suit or in this case. While it is true Frostreat ended up with a kind of property it had no use for, this was due entirely according to the declaration to a misrepresentation of quality, not accident or injury or destruction.

 We are also of opinion the Products Hazard provision does not expand the coverage beyond accidental injury or destruction of property. It simply provides for another situation in which the insuring clause will be applied, but according to its terms not contrary thereto.

We do not think Swift & Co. v. Warehouse Co., 128 Tenn. 82, 158 S.W. 480, is in point. The basis of that action was negligent injury to eggs Swift & Co. had stored with Warehouse Co., and the Supreme Court

simply held that while the occasion for the damage sustained was contractual, a bailment, the basis of the suit was injury to the stored eggs by reason of their faulty storage so as to permit them to absorb fruity flavors which decreased their market value. That case, of course, involved a clear injury to property. But it furnishes no basis for this suit.

In conclusion, we expressly approve the memorandum of the Chancellor and his decree thereon, and overrule the assignments of error.

Shriver and Puryear, JJ., concur.