J. E. FESMIRE, Plaintiff,

v.

MFA MUTUAL INSURANCE COMPANY, Defendant.

Civ. A. No. C–68–156.

United States District Court
W. D. Tennessee, W. D.

Dec. 4, 1968.

James D. Causey and J. Harold Ellis, Memphis, Tenn., for plaintiff.

William I. McLain, Memphis, Tenn., for defendant.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

This diversity action was brought by plaintiff, Fesmire, a citizen of Tennessee, against defendant, MFA Mutual Insurance Co., a citizen of Missouri, under a liability insurance policy issued to plaintiff by defendant, to recover the amount of a judgment and court costs rendered against plaintiff in a personal injury action in the Circuit Court of Shelby County, Tennessee. The case here was tried with a jury to which the case was submitted for a special verdict on interrogatories. The issue presented by the pleadings and the proof is whether the defendant was obligated to afford coverage to plaintiff in view of the fact that defendant did not receive notice of the accident as required by the terms of the policy.[1] Although the jury answered all of the interrogatories favorably to plaintiff, as will be seen, there is still a question as to whether judgment should be entered for plaintiff. Accordingly, the Court took the case under advisement and has received memoranda from both parties.

Plaintiff is a heavy equipment operator for the Shelby County Road Department and he, like many other vehicle and equipment operators for the Department, received his supervision from an office maintained at the Penal Farm. The Department, prior to 1962, had begun to require such operators to carry liability insurance which would cover them and the County while operating County vehicles and equipment. Plaintiff and many other operators had procured such coverage through Treadwell & Harry, a Memphis insurance agency. In the early part of 1962, Brewer, an agent for defendant, offered coverage to them at a cheaper premium rate provided a sufficient number would sign up. Upon receiving information that enough such employees, including plaintiff, did desire to obtain coverage with defendant, Brewer and an employee of defendant set up desks in the hall outside the Road Department office and proceeded to take applications from them. Approximately seventy-five employees lined up to make their applications and, plaintiff and his witnesses testified, while the applications were being taken, Brewer advised them to report all accidents to the Road Department office there at the Penal Farm.[2]

Thereafter, in March, 1962, the policy was issued to plaintiff by defendant, which in relevant part provided:

"1. *Effect of Policy Acceptance*: By acceptance of this policy, the named insured agrees that the statements in the Declarations are his agreements and representations, and that this policy embodies all agreements, relating to this insurance, existing between himself and the Company or any of its agents.

---

1. Although the applicable limit of the policy was only $10,000, plaintiff sued for the full amount of the judgment, which was $14,750, on the theory that defendant was liable for the overage because of bad faith in its defense of the claim and in its failure to settle the claim. The Court, however, on defendant's motion at the conclusion of all of the evidence, dismissed plaintiff's claim for the overage on the ground that there was no substantial evidence of such bad faith, and plaintiff did not and does not complain about such dismissal. Therefore, this action now involves the policy limit of $10,000 with interest plus court costs of $61.25.

2. Defendant objected to this testimony on the ground that, since the liability policy later issued to plaintiff by defendant expressly provided for written notice to the defendant, receipt of such testimony would violate the parol evidence rule. The Court conditionally admitted the evidence since the issue of law so raised is the difficult issue now before the Court which the Court would not have had to answer if the jury had not determined the factual issues in favor of plaintiff. Brewer and defendant's employee denied that such statement was made by Brewer, which of course created an issue of fact that was, as stated, submitted to the jury.

\*    \*    \*    \*    \*

"4. *Insured's Duty When Loss Occurs —Notices to the Company:* In the event of accident or loss, written notice containing all particulars shall be given by or for the insured to the Company as soon as practicable, \* \* \*

\*    \*    \*    \*    \*

"13. *Changes:* Notice to or knowledge possessed by any agent or any other person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any right under the terms of this policy, but the terms of this policy may be changed or waived only by endorsement issued by the Company to form a part of this policy."

Plaintiff admitted that he read such provisions, but testified that he believed that if he followed the instructions given by Brewer, he would be in compliance with the notice provision in the policy.[3]

In August, 1963, when the policy was in effect, plaintiff, while operating a power shovel, injured one Walter, an inmate of the Penal Farm. Plaintiff testified that he promptly gave oral notice of the accident to the Road Department office there. However, there is no evidence that the defendant actually received any kind of notice of the accident until approximately a year later, after the Circuit Court suit was filed by Walter against plaintiff. Defendant then, under a reservation of rights agreement with plaintiff, defended the suit with the result heretofore indicated, and defendant has refused to pay any part of the judgment.

The interrogatories submitted to the jury in this Court and its answers thereto are as follows:

"1. Did Fesmire give notice of this accident to the County Road Department office at the Penal Farm as soon as practicable after this accident?

                              Yes
                            Yes or No

IF THE ANSWER TO THE FIRST QUESTION IS "YES," ANSWER THE SECOND QUESTION.

"2. Did the agent for this insurance company, Brewer, when he received the application for this policy from Fesmire, instruct Fesmire to report accidents covered by the policy to the County Road Department office at the Penal Farm?

                              Yes
                            Yes or No

IF THE ANSWER TO THE SECOND QUESTION IS "YES," ANSWER THE THIRD QUESTION.

"3. Did Fesmire believe and reasonably believe at the time of this accident that the giving of notice of the accident to County Road Department office at the Penal Farm constituted compliance with the notice requirement of the policy?

                              Yes
                            Yes or No

It is the contention of plaintiff that, in view of the verdict of the jury, he is entitled to prevail under the statute and case law of Tennessee because the agent Brewer, by so instructing plaintiff prior to the issuance of the policy as to the manner of giving notice, effectively waived the notice provision of the policy and created an estoppel to rely on such provision. It is the contention of defendant, on the other hand, that, in spite of the verdict of the jury, it is entitled to prevail because under such law the parol evidence rule makes the agreement

---

3. There was no evidence that the Road Department office had agreed with defendant or its agent, Brewer, to receive and transmit notices of accidents; but there was evidence that that office had in fact received oral notices and transmitted them by telephone and that it had done so on another occasion for plaintiff in which case no question of the propriety of the notice was raised by defendant.

of Brewer legally ineffective and therefore does not constitute such a waiver or create such an estoppel.

Since 1907, Tennessee has had a statute (T.C.A. § 56–705) which reads as follows:

"Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever; but this section shall not apply to licensed fire insurance brokers."

■ We believe that it is correct to say that this statute has been given effect in three separate ways: (1) it creates an agency relation, so far as the insured is concerned, between one who solicits an application for a policy and the insurance company that issues the policy pursuant to the application although no such relation actually exists (Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 266 S.W. 767, 48 A.L.R. 1168 (1924) and Maryland Casualty Co. v. F. B. Hunter & Co., 8 Tenn.App. 516 (1928)); (2) it creates a power in the soliciting agent generally to waive policy provisions and this is true even if there is a provision in the policy to the contrary (Industrial Life & Health Ins. Co. v. Trinkle, 30 Tenn.App. 243, 204 S.W.2d 827 (1947), aff'd 185 Tenn. 434, 206 S.W. 2d 414 (1947)); and (3) it renders legally effective some express or implied agreements made by such solicitors prior to the issuance of the policy although the parol evidence rule would otherwise have operated to make such agreements ineffective. (See cases hereinafter cited and discussed.) We are not, however, concerned here with the creation of an agency where none exists because it is undisputed that Brewer was the agent of defendant. Nor are we concerned with the power of an agent generally to waive policy provisions because defendant does not contend that he did not have such power. We are concerned with the question whether the agreement made by the agent, prior to the issuance of the policy, with respect to notices of accidents is rendered legally ineffective by the parol evidence rule since such agreement is plainly contrary to the notice provision in the policy.[4]

It has been held that this statute should be liberally interpreted in favor of the insured. T. H. Hayes & Sons v. Stuyvesant Ins. Co., 194 Tenn. 35, 250 S.W.2d 7 (1952) and Industrial Life & Health Ins. Co. v. Trinkle, supra. It has further been held that the purpose of the statute is to afford " * * * to the insured a responsible connection with the insuring company * * *." Maryland Casualty Co. v. McTyier, supra, 150 Tenn. at 695, 266 S.W. at 768 and T. H. Hayes & Sons, supra, 194 Tenn. at 42, 250 S.W.2d at 7.

Defendant contends that all of the Tennessee cases holding that the soliciting agent had effectively waived a policy provision fit into three categories, and that the instant case does not fit into any of these categories. The first category includes cases in which express or implied agreements were made by the agent *after* the policies were issued, to which the parol evidence rule simply does not apply since the agreement is not prior or contemporaneous with the formation of the policy contract. The second category involves situations in which the insured is relying on mutual mistake or fraud, which we do not have here. The third category includes situations in which the agent has knowledge of *existing* facts or conditions which would, under the terms of the policy when it is issued, prevent coverage from attaching, and the agent expressly or impliedly agrees to waive such terms of the policy before the policy is issued.

4. There is no question but that the policy is an "integrated" document within the requirement of the parol evidence rule and is indeed made so by its very terms.

■ It is true that the instant case does not fit into any of these categories. It is our conclusion, however, that the agent could effectively waive the notice provision in the policy and that, in view of the findings of the jury, he did so.

At the outset, we can see no difference in principle, so far as the parol evidence rule is concerned, between a situation in which the agent purports to waive a provision in the policy which would prevent coverage from attaching because of facts in existence at the time the policy is issued and a situation, such as in the instant case, where the agent purports to waive a provision in the policy with respect to a fact that may occur in the future. Furthermore, we do not believe that support for such distinction can be found in the Tennessee cases though it is true that most of them do deal with situations in which the facts that would prevent coverage were in existence when the policy was issued.

In T. H. Hayes & Sons, supra, the Court held that a provision in the policy which would have excluded coverage when the vehicle was being used as an ambulance was impliedly waived by the agent of the insurance company when it allowed the policy to be issued with knowledge that the vehicle would be so used. There is nothing in the opinion to indicate that the agent knew that the vehicle was actually being used as an ambulance at the time of the issuance of the policy or that the result would have been different if the vehicle were not actually being used as an ambulance when the policy was issued. The case of Henry v. Southern Fire & Casualty Co., 46 Tenn.App. 335, 330 S.W.2d 18 (1958) so interprets the holding in that case, the Court saying at 363, 330 S.W.2d at 31:

"In T. H. Hayes & Sons v. Stuyvesant Ins. Co., 1952, 194 Tenn. 35, 250 S.W. 2d 7, the salesman for Union Chevrolet Company sold a customer a truck with knowledge that it was to be converted into an ambulance. Union Chevrolet, as agent for defendant Insurance Company, also issued and delivered to purchaser a policy of fire and collision insurance on the truck. After a loss the insurance company denied liability on the grounds that the truck had been converted into an ambulance without its knowledge or consent. The Supreme Court held that knowledge of the agent, Union Chevrolet Company, that the truck was to be converted was imputable to its principal, the defendant insurance company, and that acquiescence by the dealer constituted a waiver on the part of the company."

In Hannah v. State Farm Mutual Insurance Co., 403 F.2d 375 (6th Cir., 1968), the insured had obtained a liability policy covering a Pontiac and was involved in an accident while driving an Oldsmobile. Under the terms of the policy, there would be no coverage afforded to the insured while driving the Oldsmobile. The insured, however, contended (and the jury agreed) that the agent who accepted his application some time before the policy was issued had at that time assured him that he would be covered while driving any automobile. The majority of the Court held that, under T.C.A. § 56–705, since the policy was issued by the insurance company through the Tennessee Assigned Risk Plan and since it thus did not voluntarily accept the application for insurance, the insurance company was not bound by the agreement of the agent. The dissenting judge thought that, even so, the insurance company should be so bound. In any event, it is clear that, but for the fact that the insurance was placed through the Assigned Risk Plan, the majority would have held that there was coverage. Here, of course, the agreement of the agent was as to a fact to occur in the future—i. e. that the insured would be covered when operating other automobiles.

We can understand the concern of our Court of Appeals, expressed in a case in which it was applying Ohio law, at to where this doctrine might lead. Ayers v. Kidney, 333 F.2d 812, 815 (6th Cir. 1964). It may be that the Tennessee doctrine of waiver and estoppel in this area is limited to cases in which the

estoppel protects but does not create a right, that is, estoppel cannot broaden insuring agreements. In E. K. Hardison Seed Co. v. Continental Casualty Co., 56 Tenn.App. 644, 410 S.W.2d 729 (1967), the Court expressed this limitation as follows:

"However, in keeping with the doctrine many times enunciated and never departed from that estoppel is available to protect a right, but never to create one (Henry County v. Standard Oil Co., 167 Tenn. 485, 71 S.W.2d 683, 93 A.L.R. 1483; Couch v. Couch, 35 Tenn.App. 464, 248 S.W.2d 327), we have no case in Tennessee in which the doctrine of estoppel was made the basis of recovery except where the loss was within the coverage provided by the insuring clauses of the contract. Dickens v. St. Paul Fire & Marine Ins. Co., 170 Tenn. 403, 95 S.W.2d 910; Baird v. Fidelity-Phenix Fire Ins. Co., 178 Tenn. 653, 162 S.W.2d 384, 140 A.L.R. 1226; Commercial Standard Ins. Co. v. Paul, 35 Tenn.App. 394, 245 S.W.2d 775; T. H. Hayes & Son v. Stuyvesant Ins. Co., 194 Tenn. 35, 250 S.W.2d 7; Hulley v. Aluminum Co. of America, supra, D.C., 143 F.Supp. 508, and Henry v. Southern Fire & Cas. Co., 46 Tenn.App. 335, 330 S.W.2d 18."

We are not sure, however, that all of the cases cited by that Court would fit into its distinction. In any event, to hold that there is a waiver and estoppel here does not run afoul of this distinction.

We therefore find and conclude that plaintiff is entitled to relief to the extent of the policy limit of $10,000, plus interest thereon from the date of the judgment against him in Circuit Court, and court costs there. Since it appears from the proof that plaintiff has paid no part of the judgment, we believe that the judgment here should allow defendant the alternative of paying the amount here held to be due to the Clerk of the Circuit Court.

Counsel will prepare a judgment for entry.