AFRICAN TRADING INTERNATION-
AL, INC., Plaintiff-Appellee,

v.

FIREMAN'S FUND INSURANCE
COMPANY, Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section.

Feb. 23, 1979.

Certiorari Denied by Supreme Court
July 2, 1979.

Patrick A. Ruth, Grace Y. Maddin, Cowan & Bird, Nashville, for defendant-appellant.

J. Greer Cummings, Jr., Boult, Cummings, Conners & Berry, Nashville, for plaintiff-appellee.

## OPINION

DROWOTA, Judge.

Defendant-Appellant Fireman's Fund Insurance Company brings this appeal from an adverse decision of the Chancery Court wherein the Chancellor reformed an insurance policy between defendant and plaintiff, African Trading International, and granted plaintiff recovery under the policy as reformed. The issues presented are whether the Chancellor committed error in reforming the insurance contract to cover the loss upon which plaintiff claims and whether W. R. Zanes & Co. of Louisiana, Inc., not a party to this cause, was the agent of defendant insurance company when it made certain representations regarding the coverage of the insurance policy here at issue and when it designated plaintiff as loss payee under a marine open cargo insurance policy in effect between Zanes as insured and defendant as insurer.

African Trading International, a Tennessee corporation, maintains, its principal place of business in Nashville and is engaged in the business of exporting goods to Africa. Mr. Percy Cohen is the secretary of African Trading and Mr. Maurice Amekuji is its president. In the fall of 1976 Mr. Cohen spoke with a Mr. Corcorran of the above mentioned W. R. Zanes & Co. in regard to the exporting of eight bales of used rags and three bales of used shoes from Nashville, Tennessee, to Lome, Togo. This shipment was plaintiff's first exporting transaction, a fact of which it appears Mr. Corcorran was aware. Mr. Cohen and Mr. Corcorran agreed after several conversations that Zanes would act as freight for-warder for African Trading, effecting the export of the rags and shoes. Mr. Cohen was to arrange transportation of the goods from Nashville to New Orleans and Zanes would select a ship, arrange for the contract of affreightment and loading of the goods, and prepare all the necessary documentation. In addition Zanes issued to plaintiff a certificate of coverage on an open cargo marine insurance policy in effect between defendant and Zanes naming African Trading as the loss payee. Coverage was for 10,000 dollars. The goods were duly loaded on the ship "Delta Uruguay" of the Delta Steamship Lines, Inc., and on December 6, 1976, the ship departed for Africa. Mr. Cohen received the certificate of insurance eight days after the ship sailed.

On arrival of the "Delta Uruguay" in Lome, Mr. Amekuji discovered that certain of the bales were missing and that some items had been removed from the other bales. The record does not explain the cause of the shortage though it is assumed by both parties that pilferage was to blame. Mr. Amekuji notified Mr. Cohen of the loss and Mr. Cohen then made a claim against defendant insurance company. Defendant insurer declined liability on the basis of a provision in the policy which made coverage F.P.A.E.C., a marine industry term meaning free from particular average, English condition.

The perils clause of this policy provides in relevant part:

Manufactured Commodities are insured against all risks of physical loss or damage from any external cause, irrespective of percentage, including theft, pilferage and/or non-delivery but . . . subject to the exclusions enumerated below.

. . . . .

. . . used or reconditioned merchandise [is] warranted free from Particular Average unless the vessel be stranded, sunk, burnt, on fire or in collision, including theft or non-delivery of an entire shipping package.

In addition, the phrase "Coverage F.P.A.E.C." is conspicuously typed on the face of the policy.

The phrase "free from Particular Average, English condition" is well defined and understood in maritime law and practice.

An average is a partial, as opposed to a total loss. A *general average* is that sort of partial loss which is incurred when some of the values at risk in the marine adventure are sacrificed to save the remainder from peril . . . An average which is not "general"—a partial loss, that is to say, which falls on the owner of the goods alone and is not partly compensated by general average contribution—is a particular average. (emphasis in original)

Gilmore & Black, Law of Admiralty, § 2–12 at 80 (2nd ed. 1975). The general exclusion from coverage of particular average is then modified by the addition of the words "English condition" to include particular average if the vessel be stranded, sunk, or burnt, or in a collision. Gilmore & Black, *supra*, at 82. Thus the policy at issue, with the F.P.A.E.C. term given effect, covers any total loss from the described perils, any general average and any particular average if the vessel meets with one of the misfortunes listed above. The defendant denied coverage then because plaintiff's loss was a partial loss, not suffered under general average circumstances and not associated with the stranding, sinking, burning or colliding of the ship. Plaintiff asks us to invalidate the F.P.A.E.C. term either by estoppel or reformation and thereby transform the policy into one which covers virtually all partial losses including the one suffered by plaintiff. It can be seen from what has been said that the plaintiff asks us to effect a tremendous expansion of the coverage of the policy. The basis for plaintiff's request is found in the conversations between plaintiff's Mr. Cohen and Mr. Corcorran of Zanes, Inc.

It appears that the subject of insurance was discussed twice by Mr. Corcorran and Mr. Cohen. Mr. Corcorran recommended that plaintiff purchase insurance for the shipment, and in particular he recommended plaintiff procure "full coverage." Mr. Corcorran testified that he explained to Mr. Cohen that partial losses would generally not be covered unless one of the perils enumerated above should befall the ship. He did not recall, however mentioning the phrase F.P.A.E.C. or particular average. Mr. Cohen testified that he was told only that he was receiving full coverage without mention of the term at issue here. In a subsequent conversation Mr. Corcorran advised Mr. Cohen that Zanes could procure insurance and that it was unnecessary for African Trading to insure the shipment through its local insurance agent.

African Trading paid the the insurance premium of $37.75 and an insurance application fee of $2.50 to Zanes who paid it on to Fireman's Fund less a 10% commission. Zanes then issued plaintiff the insurance certificate on a printed form supplied by Fireman's Fund with Zanes appearing as named assured and plaintiff as loss payee.

After hearing testimony from Mr. Cohen, Mr. Amekuji and Mr. Corcorran the Chancellor held that Zanes was acting as the agent of Fireman's Fund when it procured insurance for plaintiff's shipment and that because of Mr. Corcorran's representation to Mr. Cohen that the policy provided full coverage the phrase "Coverage F.P.A.E.C." typed on the face of the policy should not bar plaintiff's recovery on the policy. Judgment was entered for the plaintiff in the amount of $4,082.89.

Defendant brought this appeal asserting as error the Chancellor's finding that Zanes was the agent of defendant and the Chancellor's refusal to enforce the F.P.A.E.C. term. Plaintiff responds that the record supports a finding of agency and that the F.P.A.E.C. term was properly voided on either a reformation or an estoppel theory. We conclude that the F.P.A.E.C. term should have been enforced and therefore we do not reach the agency question.

■ It is an established principle of insurance law in Tennessee that a contract of insurance cannot be created by waiver or estoppel. Nor can these principles operate

to broaden the coverage of an existing contract to include risks not originally contracted for. *Dallas Glass of Hendersonville, Inc. v. Bituminous Fire & Marine Ins. Co.,* 544 S.W.2d 351 (Tenn.1976); *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's Inc.,* 493 F.2d 257 (6th Cir. 1974); *Hardison Seed Co. v. Continental Cas. Co.,* 56 Tenn.App. 644, 410 S.W.2d 729 (1966). In this Tennessee is in line with the majority of jurisdictions in the United States. *See* 1 A.L.R.3d 1139. The principle underlying this restriction in the use of estoppel or waiver is that the insurer should not be liable for coverage for which it has received no consideration.

■ Assuming without deciding that Zanes was the agent of the defendant it is evident that estoppel or waiver cannot support invalidation of the F.P.A.E.C. term in the contract before us. To eliminate the F.P.A.E.C. term would be to radically extend the coverage of this policy, in effect to write a new policy providing for greater coverage than was originally undertaken by the defendant. Support for this conclusion is found in the uncontradicted testimony of Mr. Corcorran, a man with 30 years experience in the export business, that plaintiff could not have procured for a shipment of this type a policy with the kind of coverage which plaintiff now asks us to create. Such a policy would be commercially unavailable.

We do not find a different result is required by *Dallas Glass of Hendersonville, Inc. v. Bituminous Fire & Marine Ins. Co., supra.* That case turned expressly on the waiver of a limitation of coverage. The Court there found that the insurer, through its agents, had by virtue of a course of dealing spanning several years waived a 500 mile limitation on a cargo insurance policy. Under those circumstances the Court concluded it was not creating a new contract by invalidating the limitation but merely enforcing the contract in a manner consonant with the understanding of the parties. Moreover, in that case the coverage without the mileage limitation was commercially available, albeit at a higher premium.

■ Similarly, we think it inappropriate to reform this insurance policy to exclude the F.P.A.E.C. term. Under Tennessee law a contract of insurance may be reformed only upon clear and cogent evidence of fraud or of a mutual mistake in the drafting of the policy which renders the terms of the policy different from those agreed upon by the parties. *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's Inc.,* 493 F.2d 257 (6th Cir. 1974); *McMillan v. Great Southern Corp.,* 63 Tenn.App. 732, 480 S.W.2d 152 (1972). There is no suggestion of fraud in this case. Rather, plaintiff argues that there was a mutual mistake in that the parties intended "full coverage" but the contract fails to reflect that intention. We consider the following statement from *Hardison Seed Co. v. Continental Casualty Co., supra,* to be dispositive of plaintiff's argument:

> . . . a court of equity will not reform a policy except upon clear, cogent and convincing evidence of both the mistake and of the antecedent agreement with respect to which the mistake was made. [citations omitted] This, of course, implies there must have been an antecedent agreement that was not incorporated in the written instrument to be reformed and that a mistake was made in the integration of the formal contract, and not with respect to the treatying between the parties during which their minds were meeting on the contract's contents.

410 S.W.2d at 732.

It is evident from the description of the conversations between Mr. Corcorran and Mr. Cohen that, assuming Zanes was the agent of defendant, the parties never agreed that the policy would cover a loss such as occurred in this case. Mr. Corcorran testified that he meant by full coverage precisely what this contract provides, that he could not have meant anything more because broader coverage on this shipment was unavailable. Plaintiff stated in oral argument that Mr. Cohen understood "full coverage" to signify virtually an all risks policy. Clearly there is no antecedent agreement to which the policy may be reformed.

Concluding that neither estoppel nor reformation should operate to deny force to the F.P.A.E.C. term in this policy, even if Zanes was the agent of defendant, we overrule the Chancellor's decree and enter judgment for the defendant Fireman's Fund Insurance Co.

Reversed and rendered.

TODD and LEWIS, JJ., concur.