FIRST AMERICAN NATIONAL BANK,    )
                                 )
        Plaintiff/Appellee,      )
                                 )        Appeal No.
                                 )        01-A-01-9702-CH-00051
VS.                              )
                                 )        Davidson Chancery
                                 )        No. 93-3015-III(II)
NATIONAL PROJECT SERVICES,       )
INC.,                            )
                                 )
        Defendant/Appellant.     )

**FILED**

**September 17, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

ANTHONY J. McFARLAND
CLISBY H. BARROW
BRYAN E. LARSON
2700 First American Center
Nashville, Tennessee 37238
        Attorneys for Plaintiff/Appellee

ALFRED H. KNIGHT
215 Second Avenue, North
Nashville, Tennessee 37201

NADER BAYDOUN
JOHN I. HARRIS, III
Nashville City Center
511 Union Street, Suite 2420
Nashville, Tennessee 37219-1716
        Attorneys for Defendant/Appellant

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
LEWIS, J.

# O P I N I O N

A small business asserts that its bank had an implied duty to give reasonable notice of its intent to stop extending credit to the business; that such implied promise was not within the statute of frauds; and that even if it were within the statute of frauds, the bank was estopped to raise the statute as a defense. The Chancery Court of Davidson County granted summary judgment to the bank. We hold that in this case the bank did not have a duty to inform the customer that it was terminating the customer's credit. Therefore, we affirm the lower court's order.

## I.

The following facts are stated in the light most favorable to the appellant. *See Allied Sound, Inc. v. Neely*, 909 S.W.2d 815 (Tenn. App. 1995).

National Project Services, Inc. (NPS) operated a small business selling industrial supplies. A branch manager of First American National Bank (the bank) contacted the principal owners of the business, seeking to establish a banking relationship. The principals asked the branch manager for a line of credit, but the bank turned them down. The branch manager did say that he could extend credit of up to $30,000 on his own and that he would do business with the company on that basis. NPS transferred its accounts to the bank.

In general, NPS filled orders for industrial supplies by ordering the supplies from the manufacturers and delivering the goods to the purchaser. Initially, when the company received an order, it took the documents to the bank and borrowed the money to cover the expenses incurred in filling the order. The relationship was informal but the NPS principals interpreted the branch manager's statements as a promise to lend money on each purchase order up to the $30,000 limit. They admit, however, that he did not tell them that; that he did not represent that the arrangement

would exist for any particular period of time; or that the loans would continue to be made at a particular interest rate or for a particular repayment period.

Later, the bank made NPS a real estate loan and a loan to purchase a computer. In March of 1990 the bank did establish a line of credit to finance NPS' inventory purchases, and in July of 1991 the bank increased the line of credit to $180,000, substantially all of which was subsequently drawn by NPS.

Early in 1992, the bank transferred the responsibility for NPS matters to the central office and ceased making the individual loans to finance purchase orders. Someone from the bank assured NPS that the loans would be resumed when the transfer was complete. As a result, NPS did not seek other sources of credit and continued to seek orders on the same level as before. In January of 1993 the bank finally notified NPS that it (the bank) would not resume extending NPS credit. NPS had by this time so exhausted its working capital that the company collapsed.

When the bank sued NPS on the loans made before 1992, NPS filed a counterclaim for damages, alleging breach of contract, fraud, negligent misrepresentations and common law. The chancellor granted summary judgment to the bank on all claims.

## II.

On appeal NPS presents only one theory: that the bank had an implied duty to notify NPS that it would no longer make loans to fund the company's purchase orders. NPS now concedes that an action on the promise to resume funding is barred by the statute of frauds, Tenn. Code Ann. § 29-2-101(b)(1)(1996 Supp.)[1] Therefore,

---

[1]Tenn. Code Ann. § 29-2-101(b)(1) provides:

No action shall be brought against a lender or creditor upon any promise or commitment to lend money or to extend credit, or upon any promise or commitment to

- 3 -

they allege that the bank's breach of duty -- not its promise to make loans -- is the basis for the bank's liability.

The authority for the breach of duty theory is found in *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752 (6th Cir. 1985). In that case the bank had established a line of credit for its customer and had taken a security interest in all of the customer's inventory and accounts receivable. In addition the bank required that all of the customer's receipts be placed in a "blocked account" to which only the bank had access. When the customer requested to draw on the line of credit and the bank refused without warning, the customer suffered financial ruin.

The law of New York governed the relationship between the parties, and the trial judge instructed the jury that there is a good faith obligation implied in every contract; that this obligation may have imposed on the bank a duty to give notice to its customer when it decided to refuse to advance funds within the line of credit; and that the bank breached the duty unless its decision to terminate the line of credit without notice was made in good faith and in the reasonable exercise of its discretion. The Sixth Circuit Court of Appeals approved this interpretation of New York law and said, "[t]his obligation to act in good faith would require a period of notice to [the customer] to allow it a reasonable opportunity to seek alternate financing, absent valid business reasons precluding [the bank] from doing so." 757 F.2d at 759.

Even if we assume that the law in Tennessee is the same as it is in New York, there is a fundamental difference in the relationship between the bank and NPS, and the bank and its customer in *K.M.C.* In that case the customer had an existing written line of credit and the draw request by the customer was within the amount

---

alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the lender or creditor, or some other person by him thereunto lawfully authorized.

available under the line of credit. The customer, therefore, had a reasonable expectation of continued credit.

In this case, NPS did not have an available line of credit.[2] The most favorable view of the facts for NPS shows that it only had an oral promise by the bank to fund NPS' purchase orders -- although not in any specific amount and not for any specific period of time. Under those circumstances, NPS had no reasonable expectation of continued credit. *See Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052 (2d Cir. 1992); *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310 (2d Cir. 1993). Therefore, the bank did not have a duty to notify NPS that it would no longer do what it was not obligated to do.

## III.

## Estoppel

NPS argues on appeal that the implied promise to give notice of credit termination is not within the statute of frauds, and even if it is, the bank would be estopped to raise the statute as a defense. With our conclusion that the implied promise did not arise in this case, we pretermit these issues.

We would like to address, however, why in our judgment, estoppel would not help NPS in enforcing the alleged oral agreement to fund the purchase orders. Although the Tennessee courts have recognized that promisors may be estopped from raising the defense that their promises were not in writing, *see Baliles v. Cities Service Co.*, 578 S.W.2d 621 (Tenn. 1979), *Disney v. Henry*, 656 S.W.2d 859 (Tenn. App. 1983), estoppel cannot be used to create rights -- only to protect them. *See E. K. Hardison Seed Co. v. Continental Casualty Co.*, 56 Tenn. App. 644, 410 S.W.2d

---

[2]Although the bank had established a line of credit for NPS to finance its inventory, ninety-nine percent of the available funds under that agreement had been withdrawn. NPS does not assert that the bank had any further obligation under the line of credit.

729 (1966). If the bank, on the basis of estoppel, could be forced to continue funding to NPS, NPS would acquire greater rights than it had under the oral agreement. Therefore, the doctrine of estoppel should not be applied to secure the result NPS seeks.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings that may become necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
SAMUEL L. LEWIS, JUDGE