**CINCINNATI INSURANCE COMPANY, Appellant,**

v.

**FRED S. POST, JR., CO.; Post & Company, Inc.; Post Leasing & Sales Co.; Post Realty Company, and Fred S. Post, Jr., Appellees,**

v.

**Alex A. SHAFER, Jr., and Shafer Insurance Agency, Inc., Appellees.**

Supreme Court of Tennessee, at Knoxville.

Feb. 16, 1988.

Opinion on Petition to Rehear March 28, 1988.

Linda J. Hamilton Mowles, Morton, Lewis, King & Krieg, Knoxville, for appellant.

Thomas N. McAdams, Charles D. Susano, Jr., Bernstein, Susano & Stair, Knoxville, for appellees Fred S. Post, Jr., Co., et al.

James C. Wright, Butler, Vines, Babb & Threadgill, Knoxville, for appellees, Alex A. Shafer, Jr. and Shafer Ins. Agency, Inc.

OPINION

COOPER, Justice.

Cincinnati Insurance Company (CIC) filed this action seeking to reform a policy of insurance it had issued to Post and Company (Post). CIC contended that reformation was necessary to correct a typographical error which omitted contents coverage on a building the parties agree was meant to be insured and provided contents coverage on another building that was not to be covered and which was destroyed by fire. Post answered denying that CIC was entitled to reformation of the insurance contract and, in the event the court ordered a reformation, filed a third party action against Shafer Insurance Agency, Inc. and its president, alleging that Shafer either breached its agreement to provide insurance coverage to Post or in the alternative negligently failed to secure coverage on the contents in the warehouse destroyed by fire.

After trial, the chancellor dismissed the third-party action against Shafer, and reformed the insurance policy. The Court of Appeals reversed and held that CIC had not proved its right to reformation by clear and convincing evidence.

From our review of the evidence, we are convinced that CIC carried its burden and that the chancellor properly decreed a reformation of the policy of insurance issued by CIC to Post. We are also of the opinion that the chancellor properly dismissed the third-party action brought by Post against Shafer. Consequently, we reverse the judgment of the Court of Appeals and af-

firm the judgment entered by the chancellor.

The Court of Appeals adopted the facts as found by the chancellor in his memorandum opinion. A reading of the record confirms that the chancellor's account is a "succinct" and accurate summary of the testimony and it is reproduced here as a concurrent finding of fact by the two courts.

Post is an old and highly respected business in Knoxville, Tennessee. Post's business, insofar as this suit is concerned, involves the custom building and mounting of truck and van bodies on truck chassis. Post owns a number of buildings, more or less adjacent, on 24th Street and Ailor Avenue in Knoxville. The only two buildings of any significance to this litigation are the "main building" on 24th Street and the warehouse building on Ailor Avenue.

It was the custom of Post to solicit bids from insurance agents and companies for the various insurance needs of Post. Obviously, Post had rather extensive insurance requirements and securing Post's business was much desired by insurance sales agents. Prior to 1981, Post had placed its property and casualty insurance business with Western Casualty Company. That policy afforded no coverage on the Ailor Avenue building *or the contents thereof.* In May of 1981 Post determined to put out his insurance business for bids, which he did. Post essentially advised all bidders to submit their bids on the basis of duplicating the previous insurance coverages. Shafer, on behalf of CIC, was the low bidder and, as a result, CIC issued to Post a policy of fire and casualty insurance. Like the Western Casualty policy, the policy provided fire and casualty coverage to the 24th Street building and its contents, but did not extend any coverage to the Ailor Avenue building or its contents. Shafer discussed with Post the fact that there was no coverage on the Ailor Avenue building or its contents and a premium was quoted to Post for "contents coverage." The coverage was rejected by Post because of the relatively high premium cost. In December of 1981, marketplace factors had significantly reduced premium rates that would have been applicable to the contents coverage on the Ailor Avenue property. As a result, Shafer communicated to Post a new premium quotation for contents coverage, which again was rejected.

The following year (1982) Post again put out his insurance business for bids and, as before, all bidders were told to bid on the basis of duplicating the existing coverage. On this occasion the Simms [correct spelling "Sims"] Insurance Agency was the low bidder on behalf of Fireman's Fund Insurance Company and that company duly issued its policy to Post. Although that policy did not contain "contents coverage" on the Ailor Avenue property, Mr. Simms did undertake to put together, by way of policy endorsements, a patchwork of various coverages in an effort to provide coverage on the contents of the Ailor Avenue building. Although Fireman's Fund offered the usual and customary "contents coverage" (indeed, this particular policy had coverage on the contents of the 24th Street building), Simms elected to secure various endorsements to the "Dealer's Physical Damage" coverage in an attempt to provide coverage to the contents of the Ailor Avenue building. His purpose in so doing is clear—the premium cost of the usual contents coverage was extremely high because of the age and condition of the Ailor Avenue Building; Mr. Simms sought to circumvent this premium cost by utilizing a hodgepodge of policy endorsements to the Dealer's Physical Damage portion of the Policy. It is also clear that Mr. Simms' efforts in this regard would have been futile, putting aside for the moment any question of estoppel. Mr. Simms' patchwork of policy endorsements simply did not provide the coverage that the usual "contents coverage" afforded. Indeed, it would not have come close to providing the same coverage. Nevertheless, the Court is persuaded that at this point Post was of the opinion that it had

coverage on the contents of the Ailor Avenue building. That Simms was mistaken in his opinion that the various endorsements to the Dealer's Physical Damage coverage would afford coverage on the contents of the Ailor Avenue building is quite beside the point as far as Post is concerned; *Post* believed he had coverage.

The following year (1983), Post again put out his insurance business for bids. Shafer's representative, in gathering the information necessary to put together the premium bid, was advised by Post that *Post desired the same coverage as provided by the Fireman's Fund policy issued a year earlier.* Post furnished to Shafer all information regarding the Fireman's Fund policy which Shafer copied and ultimately used to formulate his bid. Post provided no further information. Upon reviewing the Fireman's Fund policy and related documents, as well as correspondence to Post from Mr. Simms, it is clear that there were a number of references to insurance coverage on the contents of the Ailor Avenue Building. However, as heretofore stated, all references to insurance coverage on the contents of the Ailor Avenue building concerned the *"Dealer's Physical Damage" coverage* of the Fireman's Fund policy. Under Dealer's Physical Damage coverage, the location of the insured property is irrelevant; therefore, any description of the location of the insured property is superfluous. For this reason, Shafer attached no significance to the various references regarding coverage of property located in the Ailor Avenue Building. Shafer correctly interpreted this coverage to be Dealer's Physical Damage which did not have application to loss by fire or other like calamity. Such coverage applied mainly to collision loss. Accordingly, Shafer formulated a bid on the basis of coverage that essentially duplicated the Firemen's Fund policy coverage. Shafer was the low bidder and was awarded the coverage. CIC ultimately issued its policy of insurance in May, 1983, and it is that policy that is the subject of this litigation.

Both Shafer's "proposal" and the binder delivered to Post by Shafer clearly reflected that the 24th Street building and its contents were insured; these documents further indicated that only general liability coverage extended to the Ailor Avenue building. Shafer correctly transmitted all information to CIC. However, a typist at CIC incorrectly omitted contents coverage with regard to [the] 24th Street building and incorrectly included it with regard to the Ailor Avenue building.

The Ailor Avenue building was totally destroyed by fire on August 10, 1983. CIC then filed the instant suit for reformation of the insurance policy. (Emphasis in original.)

The chancellor and the Court of Appeals reached different conclusions from these findings.

The chancellor found as follows:

Regarding the third party action filed by Post against Shafer, this court resolves all issues in favor of Shafer. Shafer was told by Post to duplicate the coverage previously written by Fireman's Fund Insurance Company. This Shafer did. Although Post was under a misapprehension of the coverage afforded by that policy, that is not the fault or responsibility of Shafer. Two years earlier, Shafer had specifically questioned Post about contents coverage on the Ailor Avenue building but Post expressed disinterest. In the year following, Post secured what he *thought* was contents coverage through the efforts of Mr. Simms. However, Simms' conglomeration of policy endorsements was not efficacious to afford that coverage. Although Post subjectively thought he had such coverage, such subjective intent or opinion was not passed on to Shafer since Post admittedly merely handed Shafer the Fireman's Fund policy and told Shafer to duplicate that coverage. In light of past dealings with Post, Shafer was under no obligation to question Post specifically about the lack of contents coverage on the Ailor Avenue

building. Therefore, the third party action against Shafer should be dismissed.

The basic issue of whether or not this contract of insurance should be reformed is much more troublesome than the first issue. The Court has found, as a matter of fact, that Post legitimately believed that the Fireman's Fund policy afforded coverage on the contents of the building on Ailor Avenue. That such coverage in reality did not exist is irrelevant as long as Post truly believed that there was such coverage since "state of mind" is usually a critical determination in the resolution of reformation suits. It is also clear that CIC never intended to issue contents coverage concerning the Ailor Avenue building. The Shafer proposal and binder left with Post reflected no such coverage. All documents forwarded to CIC by Shafer clearly reflected that there was no coverage on the contents of the Ailor Avenue building. However, through the carelessness of a CIC typist, contents coverage was shown to exist on the contents of the Ailor Avenue building. This error was compounded at the offices of CIC when that error was not detected and compounded even further by Shafer failing to note the error. Indeed, the error was not caught until the building and its contents were destroyed by fire on August 10, 1983.

Post insists that the mistake was not mutual, but was unilateral on the part of CIC. He maintains, with some persuasiveness, that Post subjectively believed that he had coverage on Ailor Avenue and therefore the error on the part of CIC, even though merely typographical, was a unilateral mistake and this will not provide a basis for reformation. However, the Court feels that the "antecedent agreement" between Post and CIC concerned the Fireman's Fund policy rather than "contents coverage" per se on the Ailor Avenue property. In other words, there clearly was never a meeting of the minds of these parties concerning contents coverage on the Ailor Avenue property. Post thought there was such coverage and Shafer was under the impression that there was to be no contents coverage. However, the subject of their antecedent agreement was not "contents coverage" on the Ailor Avenue building, but rather was the *contents of the Fireman's Fund policy.* Post told Shafer to duplicate the Fireman's fund coverage. This Shafer undertook to do. Post did not in any way communicate his subjective misunderstanding of the coverage afforded by the Fireman's Fund policy to Shafer. The agreement of these parties was for Shafer (and ultimately CIC) to provide the same coverage as the Fireman's Fund policy. *That* was the antecedent agreement. That antecedent agreement, by reason of mutual mistake of the parties, was not incorporated into the policy of insurance. Had Post not advised Shafer to duplicate Fireman's Fund coverage, then Post's subjective opinion concerning his existing coverage would preclude reformation since there was no *mutual* mistake of fact. However, Post advised Shafer to duplicate the Fireman's Fund coverage, which Shafer undertook to do, but which CIC failed to do correctly. To this extent, there was a mutual mistake. In other words, what did both parties agree upon that was *not* contained in the contract of insurance? The answer is, they agreed that CIC would provide the "same coverage" as afforded by the Fireman's Fund policy. Although this was their agreement, that was not what was ultimately typed and delivered to Shafer by CIC.

CIC is entitled to reformation of its insurance contract to reflect that there was contents coverage on the 24th Street building but not on the Ailor Avenue building, which will be consistent with the previous Fireman's Fund policy. (Emphasis in original.)

On the other hand, the Court of Appeals found:

While we concede the Chancellor's position is arguable, we are persuaded that it is equally plausible that Post desired the coverage afforded under the Fireman's Fund policy rather than as provided therein.... In this regard we do concur in the Chancellor's opinion that

the provisions of the Fireman's Fund policy would not provide coverage. However, there is little question in our minds that had the fire occurred during the term of the Fireman's Fund policy, Post would unquestionably have collected.

We say this because of the letters from the agent of Fireman's Fund to Post, some of which accompanied the various endorsements.[1] Moreover, although there is a dispute as to this fact, we think the weight of the evidence supports the finding of the Chancellor that these letters from the agent were in the loose-leaf folder supplied to Shafer, agent for CIC, when bids were solicited.

For the foregoing reasons we are unable to find by the required quantum of proof that a mutual mistake occurred as to the insurance coverage, and dismiss the original complaint.

■ After reviewing the record, we agree with the chancellor's conclusions. Under Tennessee law a contract of insurance may be reformed only upon clear and cogent evidence of fraud or of a mistake in the drafting of the policy which renders the terms of the policy different from those agreed upon by the parties. *African Trading International, Inc. v. Fireman's Fund Insurance Co.*, 583 S.W.2d 607, 610 (Tenn.App.1979); *E.K. Hardison Seed Co. v. Continental Casualty Co.*, 56 Tenn.App. 644, 410 S.W.2d 729, 732 (1966).

■ There is, of course, clear and cogent evidence of a mistake in the typing (drafting) of the policy by CIC. As the chancellor noted, the Shafer proposal and binder left with Post clearly showed there was no contents coverage offered on the Ailor Avenue warehouse. All documents forwarded to CIC by Shafer clearly reflected there was no coverage on the contents of the Ailor Avenue building. Only the carelessness of a typist at CIC and the failure of any other person to catch this mistake permitted such an obviously erroneous provision to be included in the policy.

It seems, however, that where the Court of Appeals differs with the chancellor is the question of whether there is "clear and cogent proof" that the mistake in drafting the policy *rendered the terms of the policy different from those agreed upon by the parties.* Here again we agree with the chancellor.

In the 1981 negotiations with Shafer, Post had rejected coverage of the building and contents at 2411 Ailor Avenue because of high premiums. In 1982, Robert Sims, the agent of Fireman's Fund, thought that he could achieve the equivalent of contents coverage at a 95% reduction in premiums for the Ailor Avenue warehouse through Dealer's Physical Damage Coverage. This is regularly a blanket insurance covering all owned vehicles held for sale by a dealer and the equivalent of regular automobile insurance for collision, comprehensive coverage, etc. The premiums would vary as the inventory changed. Sims attempted to expand the coverage to include the materials stored at the warehouse used to construct truck and van bodies by changing the meaning of "owned autos" in the policy to include "truck bodies" and by specifically referring to the Ailor Avenue location in the policy section concerning this coverage.[2] It can be inferred from the proof that Sims led Post to believe that by this procedure he had effected the equivalent of contents coverage under the fire insurance policy for personal property stored at the Ailor Avenue warehouse. However, anyone looking at the Fireman's Fund policy with no knowledge of Sims' intent to provide for contents coverage under Dealer's Physical Damage Coverage would not have interpreted it in this manner, and as both courts have found the provisions of the policy did not provide contents coverage.

When Shafer, CIC's agent, bid on the insurance in 1983, he was told by Post to duplicate the coverage afforded by the

1. The agent for Fireman's Fund testified that the endorsements were intended and did in fact provide contents coverage as to the Ailor Avenue property in accordance with his representation to Post. (Footnote from quoted material.)

2. According to the majority of experts, dealer's physical damage coverage applies irrespective of location.

Fireman's Fund policy. Post, of course, had the mistaken belief, uncommunicated to Shafer, that Sims had obtained contents coverage under the Fireman's Fund policy; however, the chancellor found, and we agree, that the antecedent agreement of the parties was for CIC to provide Post the same coverage as was provided in the Fireman's Fund policy. There was no antecedent agreement concerning contents coverage on the Ailor Avenue warehouse policy as the Fireman's Fund policy did not *per se* provide coverage. Coverage under that policy, if any, would have been by estoppel predicated upon representations of Fireman's Fund's agent. Without knowing of Mr. Sims' representations to Post and intent to provide coverage of contents of the Ailor Avenue property in an unconventional manner there was no way CIC would have ever understood from Post's instructions that it was requesting coverage of the contents of the Ailor warehouse against fire loss.[3] The binder issued by Shafer to Post and the application to CIC provided the same coverages as the Fireman's Fund policy. They did not include coverage of the contents of the Ailor Avenue warehouse against fire loss. There is clear, cogent and convincing proof that a typing error was made by a CIC employee in drafting the policy so that the policy as issued differed from the antecedent agreement of the parties in that it omitted from coverage the contents of the building on 24th Street, which the parties agree was meant to be insured, and included the contents of the Ailor Avenue warehouse. Reformation would result in correcting the typographical error in the policy so that it would then correspond to the antecedent agreement between Post and CIC's agent

Shafer and provide the same coverages as the Fireman's Fund policy.

Post also advances the argument that Shafer was negligent in fulfilling his obligation to Post and breached his contract to duplicate the existing coverage. We find no merit in this argument. Shafer did exactly what Post told him to do, that is, duplicate the coverage previously written by Fireman's Fund. Although Post may have subjectively believed he had coverage on the contents of the Ailor warehouse, he did not pass this belief on to Shafer, but told him only to duplicate the coverages in the existing policy.

Accordingly, the judgment of the Court of Appeals is reversed. The judgment of the trial court ordering a reformation of the policy of insurance issued Post by CIC, and dismissing the cross-action against Shafer is affirmed. Costs are adjudged against Post and its sureties.

HARBISON, C.J., and FONES, DROWOTA, and O'BRIEN, JJ., concur.

## OPINION ON PETITION TO REHEAR

A petition for rehearing has been filed by appellees, Fred S. Post, Jr., Company; Post & Company, Inc., Post Leasing and Sales Company, Post Realty Company, and Fred S. Post, Jr. After consideration of the petition, the Court is of the opinion it is without merit. Accordingly, the petition is overruled at the cost of appellees.

---

**3.** Interestingly, however, when Post originally claimed contents coverage after the fire they referred CIC's representatives to the property damage portion of the general liability policy shown on Shafer's initial proposal. This covered damage to property belonging to persons other than Post.